## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENZO COSTA<br>Saint Elizabeths Hospital<br>1100 Alabama Avenue SE<br>Washington, DC 20032<br><br>VINITA SMITH<br>Saint Elizabeths Hospital<br>1100 Alabama Avenue SE<br>Washington, DC 20032<br><br>WILLIAM DUNBAR<br>Saint Elizabeths Hospital<br>1100 Alabama Avenue SE<br>Washington, DC 20032<br><br>STEFON KIRKPATRICK<br>Saint Elizabeths Hospital<br>1100 Alabama Avenue SE<br>Washington, DC 20032<br>      on behalf of themselves and all persons<br>      similarly situated,<br><br>               Plaintiffs,<br>    v.<br><br>BARBARA J. BAZRON, Director<br>Department of Behavioral Health<br>in her individual capacity<br>64 New York Avenue, NE - 3rd Floor<br>Washington, DC 20002<br><br>MARK J. CHASTANG, Chief<br>Executive Officer, Saint Elizabeths Hospital<br>in his individual capacity<br>1100 Alabama Avenue, SE<br>Washington, DC 20032<br><br>DISTRICT OF COLUMBIA<br>c/o Attorney General of the District of Columbia<br>441 4th Street, NW<br>Washington, DC 20001,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT** |

## CLASS ACTION COMPLAINT

(For declaratory and injunctive relief—unconstitutional conditions at Saint Elizabeths Hospital)

### Introduction

1.      A hospital without water is not really a hospital.  Plaintiffs Enzo Costa, Vinita Smith, Stefon Kirkpatrick, and William Dunbar are all patients at Saint Elizabeths Hospital, the District's psychiatric hospital ("Saint Elizabeths" or the "Hospital").  They are four of approximately 270 individuals with mental health disabilities at Saint Elizabeths Hospital. Plaintiffs and other similarly situated patients are currently subject to unconstitutional and inhumane conditions that shock the conscience.  Saint Elizabeths Hospital has been without safe, running water since September 26, 2019, exposing these vulnerable patients to irreparable harmful physical, emotional, and mental health consequences.  Although there are reports that the water is being turned back on (see ¶34 below), this is not the first time that government officials have promised that the water will restored during this current crisis.  It is also the second time in three years that Saint Elizabeths Hospital has experienced a major and extended water outage.

2.      The extended water outage is directly impacting necessary patient medical care. Defendants closed the Treatment Mall, the location at the Hospital where treatment planning meetings are held and patients receive group therapy, art therapy, and music therapy, and they have curtailed or suspended a wide variety of therapy and other forms of psychiatric care on which Plaintiffs and members of the class demand and need to manage and maintain their mental health.  Patients are confined to their units and their rooms and are unable to attend regularly scheduled therapy.  Patients cannot access other forms of routine medical care.

3.      Unhygienic conditions are pervasive to the point where they are endangering patient health.  As a result of the extended water crisis, patients at Saint Elizabeths, all of whom

are committed to the District's care and custody, are enduring inhumane, unsafe, and medically dangerous conditions that risk the health, mental health, and safety.   Patients cannot shower, wash their hands, or use the toilets regularly.  Fecal matter, urine, and menstrual blood are accumulating in the bathrooms.  Patients are only allowed to shower on a limited schedule, and must shower outside in dirty and portable showers which are inaccessible to the many patients with mobility disabilities.

4.      This Class Action Complaint challenges the Defendant's decision to keep Saint Elizabeths operating during this extended water crisis without adequate protections for patients. Despite the fact that there is no safe, running water, Defendants are continuing to admit new patients at Saint Elizabeths Hospital and to keep patients at Saint Elizabeths rather than transferring them to other appropriate facilities or discharging them to community-based care where appropriate.  Defendants are not providing appropriate care and safety for Plaintiffs and other similarly situated patients in violation their due process rights and rights under federal law Defendant's conduct in continuing to commit Plaintiffs in facility with no safe, running, water is so egregious as to shock the conscience.

## Subject Matter Jurisdiction & Venue

5.      The Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343 because this action presents federal questions and seeks to redress the deprivation of rights under the Fifth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. §1983.

6.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because all of the events giving rise to the claims took place in this District.

7.      Declaratory relief is authorized by 28 U.S.C. §2201.  A declaration of law is necessary and appropriate to determine the parties' respective rights and duties.

8.      Injunctive relief is authorized by 28 U.S.C. § 2202.

**Parties**

9.      Enzo Costa is thirty-eight years old and is a patient at Saint Elizabeths Hospital in Unit 1C.  He is diagnosed with schizophrenia, dystonia, schizo-affective disorder, and anti-social personality disorder.  He is indefinitely, involuntarily civilly committed to the District's care.

10.     Vinita Smith is a fifty-six years old and is a patient at Saint Elizabeths Hospital in Unit 1F.  She is diagnosed with schizo-affective disorder that requires medication and therapy. She is indefinitely, involuntarily civilly committed to the District's care.

11.     Stefon Kirkpatrick is thirty years old and is a patient at Saint Elizabeths Hospital in Unit 2C.  He is diagnosed with psychosis disorder.  He is indefinitely, involuntarily civilly committed to the District's care.

12.     William Dunbar is thirty years old and is a patient at Saint Elizabeths Hospital in Unit 2A. He is diagnosed with paranoia schizophrenia.  He is indefinitely, involuntarily civilly committed to the District's care.

13.     Plaintiffs bring this action on behalf of themselves and other similarly situated patients at Saint Elizabeths Hospital.

14.     The named Plaintiffs and the members of the Plaintiff Class are persons with a disability or perceived to have a disability, as that term is defined in the Americans with Disabilities Act ("ADA"), and are entitled to the protections of the ADA. 42 U.S.C. §12102(2)(A).

15.     Defendant District of Columbia ("the District") owns and operates Saint Elizabeths Hospital, and is responsible for the services and supports provided to patients at Saint Elizabeths.  Saint Elizabeths is the District's only public psychiatric facility for individuals with serious and persistent mental illness who need intensive inpatient care to support their recovery.

Saint Elizabeths also provides mental health evaluations and care to patients committed by the courts.

16.     The District of Columbia is a public entity as that term is defined in the ADA. 42 U.S.C. § 12131(1).

17.     Defendant Barbara Bazron is the Director of the Department of Behavioral Health, the District agency that oversees Saint Elizabeth.  She is sued in her individual capacity.

18.     Defendant Mark Chastang is the Chief Executive Officer of Saint Elizabeths Hospital.  He is sued in his individual capacity.

## Statement of Facts

### Contaminated Water at Saint Elizabeths Hospital

19.     Saint Elizabeths Hospital is the District's public psychiatric facility and serves individuals with mental illness who need intensive inpatient care. Saint Elizabeths is the District's only public psychiatric facility for individuals with serious and persistent mental illness who need intensive inpatient care to support their recovery. Saint Elizabeth's also provides mental health evaluations and care to patients committed by the courts.

20.     Patients at Saint Elizabeths Hospital are entitled to a dignified, respectful and supportive environment and generally accepted standards of individualized treatment, continuity of care, professionalism, and health and safety.

21.     Saint Elizabeths has an average of 270 patients per day and approximately 700 employees.

22.     Saint Elizabeths has not had safe, running water since at least September 26, 2019.  Since September 26, 2019, the water supply at Saint Elizabeths has been either completely turned off or has been limited for sewage use only.

23.     Despite the extended water outage and the inability to provide appropriate, required medical care and therapy, as described below, Saint Elizabeths is still accepting new patients.

24.     The extended water outage and its effects cause a clear risk to the health and safety of Saint Elizabeths' patients, including Plaintiffs and class members.  The extended water outage and its effects creates an unreasonable risk of traumatizing patients and exacerbates symptoms of mental illness.

25.     The current conditions at Saint Elizabeths, as described below, will result in long lasting, if not permanent, damage to patients and their efforts at recovery.

26.     The current conditions at Saint Elizabeths, as described below, violate professional standards of care and treatment.

27.     On September 26, 2019, the D.C. Department of Behavioral Health ("DBH") received preliminary lab results for a water quality test of Saint Elizabeths showing evidence of pseudomonas and legionella bacteria in the facility's water supply.

28.     Legionella bacteria is known for causing Legionnaires' disease, which can lead to severe infections in people with weakened immune systems.  According to the Centers for Disease Control and Prevention, one out of four people who contract Legionnaires' disease in a healthcare setting dies because of it.

29.     Pseudomonas bacteria can lead to severe infections for people with weakened immune systems.

30.     In response to the bacteria found in the water supply, DBH reportedly implemented its "water emergency protocol" and turned the water off completely.  Upon

information and belief, the water has been turned on occasionally and for limited purposes since September 26, 2019 but at no point has Saint Elizabeths had safe, running water.

31.     At the end of September, Plaintiffs Ms. Smith, Mr. Costa, Mr. Kirkpatrick, and Mr. Dunbar were abruptly told by staff that the water would be shut off because there was a water problem.

32.     Upon information and belief, DBH hired contractors to flush Saint Elizabeths' water system with chlorine, but testing following the "super chlorination" of the water system continued to show legionella within the facility's water system.

33.     According to Plaintiff Mr. Costa, as of 4:00 p.m. on October 23, 2019, the water remained shut off at Saint Elizabeths and upon information and belief, DBH has not given a precise date that it will be turned back on.

34.     At 5:45 p.m. on October 23, 2019, Councilmember Vincent Gray tweeted that he had been informed by an unnamed source that "all bacteria has been eliminated" from the water system at St. Elizabeths Hospital and that "the process has already begun to restore full water service to the hospital."  According to Vincent Gray's tweets, the "toilet are fully operational" and "[F]aucet heads are being reconnected now and that process should be fully completed by tomorrow [October 24, 2019]."  Vincent Gray has shared no supporting documents, water tests, or information from DBH or Saint Elizabeths Hospital on Twitter.

35.     Each of the previous dates DBH communicated to patients, their attorneys, or the public for when DBH expected to have safe running water has not been met.

36.     This is the second time in three years that Saint Elizabeths Hospital has experienced an extended water outage.  Defendants' response to this second extended water

outage indicates that they do not have an appropriate Emergency Water Supply Plan to manage extended water outages at Saint Elizabeths Hospital.

37.     Plaintiffs are all indefinitely, involuntarily committed to the District's care and will likely be committed at Saint Elizabeths for all or most of their lives.  For example, Ms. Smith has been committed to Saint Elizabeth's for approximately 17 years.

38.     As discussed below, the extended water outage at Saint Elizabeths that plaintiffs continue to suffer is irreparably harming the Plaintiffs and plaintiff class. Furthermore, even if the clean water is restored in the near future, Plaintiffs and the plaintiff class will remain at risk of further irreparable harm until the Defendants remediate conditions at Saint Elizabeths, provide adequate mental health services to meet the current needs of patients, and establish an appropriate Emergency Water Supply Plan. Thus, even if the current crisis is ameliorated, Plaintiffs will still be at risk of further irreparable harm.  It is also far from clear that the wrongful behavior cannot be expected recur.

**Defendants Are Depriving Patients of Essential Medical and/or Mental Health Care**

39.     The extended water outage at Saint Elizabeths has prevented patients from receiving appropriate and necessary care, including medical care, psychiatric care, and therapy, creating an imminent risk of irreparable harm.

40.     Because of the extended water outage, Defendants closed the Treatment Mall. Patients remain on their locked wards and are not receiving appropriate group therapy, art therapy, or exercise.

41.     Staff, including psychologists and psychiatrists, are not regularly attending work because of the water crisis, forcing cancelations of patient team meetings and other appointments.

42.     Defendants have severely curtailed or suspended the psychiatric care on which patients depend.  Patients at Saint Elizabeths, including Plaintiffs, are receiving fewer services, and less of the services they are still receiving, than normal.  The minimal services they are receiving are not appropriate or tailored to their needs.

43.     DBH has not explained how it is appropriately dispensing medication, particularly those medications that need to be suspended in water. DBH has not made any statement about how they are addressing patients' medication side effects that are related to the lack of adequate water or that need water in response, such as dry mouth and dehydration.

44.     In addition to depriving patients of psychiatric care necessary on an ongoing basis, Saint Elizabeths' staff are failing to provide other types of health care.  Upon information and belief, staff are not performing routine checks of new patients for lice, bacteria, and other infections.

45.     Patients have no access to dentistry and podiatry care that is typically available at Saint Elizabeths.

46.     Ms. Smith has had a toothache but cannot go to the dentist.

47.     Mr. Costa's ward administrator, psychologist, psychiatrist, and therapist have all missed work during the time period while the water was shut off and have not been able to convene his team meetings.  Mr. Costa has been unable to talk to his psychiatrist about switching one of his medications since the water outage occurred.

48.     Mr. Costa has not been able to access behavioral therapy, anger management classes, group therapy, art therapy, or the gym since Defendants closed the Treatment Mall.

49.     Mr. Costa normally gets 40 hours per week of therapy but Defendants are providing him with just 2 hours per day (10 hours per week) currently.  The little therapy he is

receiving is inappropriate:  it is a competency restoration group but Mr. Costa is already competent.

50.     Because there was no water, Defendants have not provided Mr. Kirkpatrick with group therapy.

51.     Defendants cancelled a Narcotics Anonymous meeting that both Mr. Kirkpatrick and Mr. Dunbar attend because there was no water.

52.     Defendants have not provided Mr. Dunbar with group therapy or the opportunity to exercise since the water was shut off.

**The District is Depriving Patients of Essential Hygiene and Endangering Patient Safety**

53.     Without safe, running water, patients and staff cannot flush the toilets regularly, wash their hands, shower, wash clothing, or drink from the water fountains.  Patients at Saint Elizabeths are using bottled water, hand sanitizers, and personal care body wipes to care for their basic hygiene.  Patients are permitted limited use of temporary portable showers and toilets. Clothes and linens are only washed periodically and must be sent outside of the facility to be cleaned.

**Toilets**

54.     Patients and staff cannot regularly and routinely flush the toilets at Saint Elizabeths.  Saint Elizabeths has more than 70 operating bathrooms when the facility has running water.  A limited number of toilets within the facility are in use when the water is turned off. These toilets must be flushed manually by pouring water into the tanks. Staff are only flushing the toilets twice per day, leading to the accumulation of feces, urine, and menstrual blood.  The toilets are overflowing and human waste is flowing onto the floors in some bathrooms.  There are also a limited number of port-a-potties outside the facility which were not provided until after the water had been shut off for some time.

55.     Ms. Smith did not have access to port-a-potties for several days after the water was shut off.  While she was awaiting port-a-potties, she used the indoor toilets.  Staff would flush those toilets twice per day.  The indoor toilets were disgusting and unclean.  There were menstrual products all over the bathroom.

56.     Mr. Costa's unit, Unit 1C, normally has six toilets.  Unit 1C houses 26 men. Currently all of the men on his unit must use one toilet.  That toilet is flushed manually by pouring water into the tank only once a day.  The toilets back up and the smell from the toilets is "disgusting, pungent, sour, and strong."

57.     Mr. Costa did not have access to a port-a-potty until about a week after the water was shut off.  The port-a-potties are outside and about 200 yards from his unit.  The port-a-potties are not clean and they smell.

58.     Mr. Kirkpatrick's unit has an average of two usable toilets for approximately 25 people.  The toilets do not have running water and are flushed by staff or patients.  There is a buildup of feces on the toilet and floor.  The bathroom smells.

59.     Mr. Kirkpatrick did not have access to a port-a-potty until about 2-3 weeks after the water was shut off.

60.     Mr. Dunbar's unit, Unit 2A, only has 2 usable toilets for approximately 27 people. The smell of the toilets is so nasty and strong that it makes Mr. Dunbar want to vomit.  Mr. Dunbar is able to secure day passes to temporarily leave the facility and during this time he tries holds his solid waste until he can use toilets outside of Saint Elizabeths grounds.

### Showers

61.     Patients cannot use the indoor showers at Saint Elizabeths.  Patients have to bathe in portable outdoor showers.  DBH secured eight portable showers for Saint Elizabeths' entire patient population. The portable showers are clogged and dirty. The patients have to stand

outside in groups and take showers in rotation because they have to travel back inside the facility as a group.  There is no privacy in the showers.

62.     Before the outdoor showers arrived, Ms. Smith had to use wipes to clean herself because she was not permitted to shower indoors.  She does not like using the wipes and does not feel clean using the wipes.

63.     Ms. Smith is only permitted to use the outdoor showers on Mondays, Wednesdays and Fridays, rather than showering every day.  She is not allowed to use the showers when it is raining.

64.     Mr. Costa did not have access to a shower until about a week after the water was shut off.  On his unit, only 8 individuals are permitted to use the portable showers per day.  His unit can use the portable showers on Mondays, Wednesday, and Fridays, which means that he is only able to shower one time per week.

65.     One time that Mr. Costa was permitted to shower, the water was cold.  After he showered he had to stand outside in the cold temperatures while waiting for everyone to finish showering.  He got a headache as a result.

66.     When Mr. Costa does not have access to a shower, he has the options to clean himself with sanitary wipes or a five gallon bucket of soapy water and a wash rag.  The wipes make his skin uncomfortable.  Washing with a bucket is degrading and Mr. Costa has not used that option because it makes him feel like he is treated like an animal.

67.     Mr. Kirkpatrick used a portable shower and had to stand outside in the cold while others finished showering.  He got sick after using the portable shower, experiencing chills and a migraine.

68.     Mr. Dunbar did not have access to a portable shower for several days after the water was shut off.  When he was able to access a portable shower, the water kept turning on and off.

69.     The portable showers are not accessible for patients who use wheelchairs and with other mobility issues.  The portable showers have steps up to them.  The portable showers have narrow passageways inside. Many older patients are unable to use them.

70.     Ms. Smith's knee gave out one day while walking up the stairs to the shower.

71.     Upon information and belief, the portable showers are being overseen by male security guards only. Many women at Saint Elizabeths are survivors of sexual assault and do not feel safe using the portable showers. As a result, some of the women have not showered for more than four weeks.

### Other Essential Hygiene Needs

72.     Ms. Smith cannot wash her hands.  She must use bottled water to brush her teeth and is not always given enough water to brush her teeth.  She has not washed her hair in three weeks.  She cannot do laundry in the hospital and when her cloths were sent out to the laundry, some of them went missing.  She currently only has one clean outfit to wear.   Ms. Smith's unit has been unusually cold while the water has been shut off.   Ms. Smith's unit smells like dead rats.

73.     Mr. Costa cannot use the faucets to wash his hands, brush his teeth, or shower. The dirty toilets have attracted bugs and mosquitos that are biting him and others on his unit.

74.     Mr. Kirkpatrick cannot use the water.  He cannot do laundry and does not have access to a washer-dryer.  He does not know when he will be able to do laundry or obtain clean clothes again.

75.     Mr. Dunbar cannot use the water and has to use bottled water to drink and to brush his teeth.  Because the conditions in the bathrooms are so dirty and unhygienic, he does not feel comfortable using the bathrooms or cleaning his teeth.  Some of the closed bathrooms in his unit have signs indicating that they are quarantined because of a bacterial infection. He has had his laundry sent out only once in the last three weeks.  When his clothes were returned some had shrunk and they still felt dirty.

76.     Mr. Dunbar is permitted to leave the facility on a day pass approximately two times per month. He normally spends time with his family.  Because of the unsanitary conditions, he worries about bringing home bacteria and spreading it to his family.

**The District is Depriving Patients of a Safe and Therapeutic Environment**

77.     The lack of water has caused a tense and stressful environment among patients and staff.   Patients are confined to their units during the day instead of receiving therapy and recreation.  Staff are not regularly reporting for work.

78.     A restrictive psychiatric hospital setting like Saint Elizabeths must be safe, calm, predictable in its routine, and responsive to each individual's needs for treatment in order to achieve its goals of preventing and ameliorating harm.

79.     An environment that is chaotic, unpredictable, and unsafe, in which patients are not receiving individualized, continuous, intensive treatment risks traumatizing people further and exacerbating the psychiatric needs that were the basis for their admission.

80.     Delays in treatment of psychiatric illness in a psychiatric facility that restricts self-determination and integration into community-based settings, like Saint Elizabeths, can result in feelings of isolation, hopelessness, and despair; and increased stress and anxiety.

81.     Patients, including Ms. Smith and Mr. Costa, are unable to leave their units and rooms to receive treatments or recreate.  As a result, they and other patients are sleeping and dozing during the day.

82.     There has been an increase in fights and physical aggression between patients following the water outage.

83.     There has been an increase in the use of seclusion and restraint of the patients following the water outage.

**The District Bears Responsibility for the Conditions at St. Elizabeths**

84.     As the director of DBH, the agency that oversees Saint Elizabeths, Defendant Bazron has the authority to "[s]upervise and direct the Department" and "[e]xercise any other powers necessary and appropriate to implement the provisions of this chapter." D.C. Code § 7-1141.04.

85.     These powers make Defendant Bazron the final policymaking authority with respect to responding to emergencies at St. Elizabeths.

86.     Defendant Bazron is responsible for the fact that, during the water crisis, Saint Elizabeths has continued housing patients in unsafe conditions without adequate protections.

87.     Defendant Bazron informed reporters that she and her team were "very, very involved in making sure that we got the [water] problem solved."

88.     Defendant Bazron further demonstrated her responsibility for Saint Elizabeths' decision to keep patients in dangerous conditions without adequate protections by explaining and defending that approach to the public through multiple statements to journalists.

89.     For example, Defendant Bazron told reporters that DBH had procured "an extensive supply of bottled water" but had continued admitting patients and declined to move

patients to other locations.  Defendant Bazron also endorsed DBH's response, stating that "[t]hings are really moving very smoothly."

90.     Additionally, Defendants displayed deliberate indifference to the risk that the response to the conditions at St. Elizabeths would result in constitutional violations.  By shutting off the water at that facility, Defendants knew or should have known that they would drastically curtail access to showers, toilets, clean clothing, and medical care, and create disorder that could exacerbate patients' mental health disabilities.  The policy Defendants adopted in response to this risk was not reasonably calculated to prevent it.

## CLASS ACTION ALLEGATIONS

91.     The named Plaintiffs bring this suit on their own behalf and on behalf of all current Saint Elizabeths Hospital patients and all patients who will be admitted in the future while the water is shut off.

92.     This class is so numerous that joinder of all members in impractical.  Saint Elizabeths Hospital has approximately 270 patients currently.  Because the population changes on a daily basis, it is inherently fluid and the class also includes future members whose names are not known at this time.  Fed. R. Civ. P. 23(a)(1).

93.     There are questions of law and fact common to all class members, including but not limited to the Defendants' deprivation of the class members' substantive due process rights, the Defendants' failure to provide constitutionally safe and humane conditions to class members and the Defendants' failure to provide appropriate medical care to class members, and the District's violation of the class members' rights under the Americans with Disabilities Act.  Fed. R. Civ. P. 23(a)(3).

94.     The named Plaintiffs will fairly and adequately represent the interests of the class. They possess a strong personal interest in the subject matter of the lawsuit and are represented by

experienced counsel with expertise in class action litigation in federal court.  Counsel have the

legal knowledge and resources to fairly and adequately represent the interests of all class

members in this action.  Fed. R. Civ. P. 23(a)(4).

95.     Defendants have acted or refused to act on grounds generally applicable to the

class in that Defendants' policies and practices of violating the Plaintiffs' constitutional rights

have affected all class members. Accordingly, final injunctive and declaratory relief is

appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2).

## NECESSITY FOR EMERGENCY INJUNCTIVE RELIEF

96.     The Defendants have acted and, as of the time of filing, continue to act in

violation of the law as described above. The named Plaintiffs and the class they seek to represent

do not have an adequate remedy at law. As a result of the policies, practices, acts, and omissions

of the Defendants, the named Plaintiffs, and the class they seek to represent, have suffered, are

suffering, and will suffer serious, imminent, irreparable physical, mental, and emotional injuries.

Such serious injuries are continuing and likely irreversible.

## FIRST CLAIM FOR RELIEF:

(Claim under 42 U.S.C. §1983 for violation of the Fifth Amendment—Due Process)

97.     The Fifth Amendment's Due Process Clause protects individuals in the District of

Columbia from government conduct that deprives them of their constitutional rights because it is

"so egregious that it may fairly be said to shock the contemporary conscience."

98.     Individuals who are committed to the District's custody, like the named Plaintiffs

and other class members, have a protected constitutional right under the Due Process Clause of

the Fifth Amendment to be housed in humane conditions and to have the District take reasonable

steps to guarantee their safety.

99.     Defendants' actions are depriving class members of humane conditions by failing to provide running water which deprives them of basic sanitation including sanitary toileting, safe and sanitary showers, and clean clothes and linens, as alleged in Paragraphs 22 and 53 through 76 and by failing to maintain an appropriate Emergency Water Supply Plan after the first extended water outage, as alleged in Paragraph 36,  Defendants' actions and inactions shock the conscience and deprive class members of their constitutionally protected rights.

100.     Individuals who are committed to the District's custody, like the named Plaintiffs and other class members, have a protected constitutional right under the Due Process Clause of the Fifth Amendment to be afforded adequate medical care, including mental health care.

101.     Defendants' actions in unilaterally ceasing or altering medical care, as alleged in Paragraphs 26 and 39 through 52, departs from professionally accepted standards and/or appropriate professional judgement, and deprive class members of their constitutionally protected rights.

102.      Defendants' policies, practices, acts, and/or omissions have placed and will continue to place the named Plaintiffs and the members of the class they seek to represent at an unreasonable risk of harm as alleged in Paragraphs 1, 24, 28, 29, 38, and 39.

103.     There is no reasonable justification for the Defendants' actions.

### SECOND CLAIM FOR RELIEF:
(Claim against the District of Columbia under 42 U.S.C. §12131 et seq. for violation of the Americans with Disabilities Act)

104.     Plaintiffs re-allege the allegations in all preceding paragraphs as though fully set forth herein.

105.     The named Plaintiffs and the Plaintiff Class are individuals with disabilities within the meaning of the ADA. Their impairments substantially limit one or more major life activities, including caring for oneself, concentrating, and thinking.

17

106.    As adults who have been determined to require intensive inpatient care to support
their recovery from serious and persistent mental illness by the District, the named Plaintiffs and
the Plaintiff Class are qualified to participate in Defendants' behavioral health programs and
services. 42 U.S.C. § 12131(2).

107.    The District of Columbia is a public entity as defined by Title II of the ADA. 42
U.S.C. § 12131(1).

108.    The District of Columbia is failing to reasonably modify its system to avoid
discrimination, including but not limited to by (i) failing to cease intakes and (ii) failing to
conduct individual assessments of patients to determine whether other options exist in lieu of
continued placement at Saint Elizabeths and (iii) failing to take appropriate action for Plaintiffs
and other class members, including relocating within the District those patients for whom it is
appropriate or providing reasonably modified services for those for whom relocating is not
appropriate. 28 C.F.R. § 35.130(b)(7).

109.    The District of Columbia is utilizing methods of administration, including but not
limited to restricting all access to the Treatment Mall and thereby preventing planning team
meetings and suspending art and music therapy, vocational training, exercise, and socialization;
providing inappropriate and diminished group therapy sessions; restricting patient movement to
the patient's unit;, intermittently shutting off the water; inappropriately restricting toilets and
shower use, providing inaccessible portable showers; and suspending medically necessary
services such as dentistry and podiatry as alleged in ¶¶ 25, 30, 35, 36, 37, 40, 49, 65, and 73
above, that have the effect of defeating or substantially impairing the accomplishment of the
objectives of Defendants' behavioral health programs with respect to the Individual Named
Plaintiffs and the Plaintiff Class.  28 C.F.R. § 35.130(b)(3)(ii).

110.     Defendants' policies, practices, acts, and/or omissions violate the Americans with

Disabilities Act.  42 U.S.C. §12131

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs request that the Court:

111.     Declare that Defendants violated Plaintiffs' rights under the Fifth Amendment to

the U.S. Constitution;

112.     Declare that Defendants violated Plaintiffs' rights under the Americans with

Disabilities Act;

113.     Order injunctive relief requiring Defendants their agents, employees, and all

persons acting in concert with or on behalf of Defendants to cease their unconstitutional and

unlawful practices, including:

a.     During any extended water outage, immediate cessation of admissions at

Saint Elizabeths to the greatest extent possible;

b.     Within 48 hours during any extended water outage,, conduct individual

assessments of patients by the Medical Director with input from the

patients' treatment team, his/her attorney, and/or other supportive decision

makers as determined by patient choice to assess the effects of the current

conditions and determine whether other options exist in lieu of continued

placement at Saint Elizabeths;

c.     Implement recommendations from the assessments immediately:

i     The assessment team must consider a full range of available

alternative treatment options, including discharge to a community

setting.

      ii      Under no circumstances should an individual be transferred to a jail or nursing home.

      iii     To the extent continued placement at Saint Elizabeths' Hospital is the only reasonable option, patients must receive medical care and therapy as scheduled and specific steps should be taken to ensure that each patient has timely and complete access to sanitation, clean water, safely prepared meals, and other basic requirements for health, safety, and privacy.

d.     Conduct independent testing to ensure that the water is safe for all uses;

e.     Sanitize all Saint Elizabeths hospital facilities;

f.     Restore sanitation services and other services that were discontinued or delayed during the extended water outage;

g.     Immediately resume providing all medical and mental health treatment services, including but not limited to opening the Treatment Mall and providing all previously available services;

h.     Within 48 hours, conduct individual assessments of patients by the Medical Director with input from the patients' treatment team, his/her attorney, and/or other supportive decision makers as determined by patient choice to assess the effects of the stress and trauma of living without safe, running water in the conditions described above and the deprivation of appropriate mental health services has had on patients' mental health status and determine if changes to individual patients' treatment plans are needed;

i.   Implement any changes and recommendations from the individualized assessments immediately;

j.   Conduct regular, independent testing to ensure that the water is safe; and

k.   Appoint an independent monitor to advise the parties and the court about the implementation of any injunctive relief.

Order Defendants to develop and adopt an appropriate Emergency Water Supply Plan with input from community members and the District's protection and advocacy organization.

114.   Certify this case as a Class Action pursuant to Fed. R. Civ. P. 23(b)(2);

115.   Designate undersigned counsel as attorneys for the certified class;

116.   Award to Plaintiffs their reasonable attorney's fees and costs, as provided by law; and

117.   Grant the Plaintiffs such other relief as the Court deems just.

Dated October 23, 2019

Respectfully submitted,

/s/ Arthur B. Spitzer

Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
aspitzer@acludc.org

Kaitlin Banner (D.C. Bar No. 1000436)
Margaret Hart (D.C. Bar No. 1030528 )
Hannah Lieberman (D.C. Bar No. 336776 )
Jonathan Smith (D.C. Bar No. 396578 )
Maria Morris*

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
margaret_hart@washlaw.org
hannah_lieberman@washlaw.org
jonathan_smith@washlaw.org
maria_morris@washlaw.org

*Admitted to practice law in Alabama, New York, and California. Practicing under the supervision of DC Bar members.

Scott Michelman (D.C. Bar No. 1006945)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
smichelman@acludc.org
mperloff@acludc.org

John A. Freedman (D.C. Bar No. 453075)
Tirzah S. Lollar (D.C. Bar No. 497295)
Emily Reeder (D.C. Bar No. 252710)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C.  20004
(202) 942-5000
John.Freedman@arnoldporter.com
Tirzah.Lollar@arnoldporter.com
Emily.Reeder@arnoldporter.com