# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ENZO COSTA, et al.,

    Plaintiffs,

v.

DISTRICT OF COLUMBIA, et al.,

    Defendants.

Case No.  1:19-cv-3185 (RDM)

## MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

    Plaintiffs hereby move, pursuant to Fed. R. Civ. P. 26, for an order allowing them to take discovery regarding certain factual assertions the Defendants have made in conjunction with their Rule 12(b)(1) motion to dismiss on the grounds that the court purportedly lacks jurisdiction over this matter.  Def. Mot. 6-12. Defendants' assertions of mootness and lack of redressability are predicated on a number of factual assertions, many of which are contested and contrary to both public and non-public information available to Plaintiffs.  Defendants have not been transparent with either the Plaintiffs or the public about the origin of the last two major water outages, the bases for asserting that the matter has been fully remediated, and their assertion that "there is no reasonable expectation that the alleged violation will recur."  Mot. 8.  Accordingly, Plaintiffs seek targeted requests for production (topics set forth in Appendix A) regarding the factual bases for these assertions before a response to the Rule 12 motion is filed.  Plaintiff also requests the ability to seek a deposition under Fed R. Civ. P. 30(b)(6) in the event that the document production does not provide the information Plaintiffs seek.

Plaintiffs propose that the Court order Defendants to provide responsive documents within three weeks, following which Plaintiffs will file an opposition to the Rule 12 motion in two weeks.  Plaintiff counsel have met and conferred with Defendants' counsel regarding this motion.  Defendants do not consent to the motion but do consent to Plaintiffs' request to file their opposition to the Rule 12 motion on an extended schedule if the Court grants this motion.

## BACKGROUND

Saint Elizabeths Hospital, the only public psychiatric facility in the District for individuals with serious and persistent mental illness who need intensive inpatient care to support their recovery, was without clean running water for 28 days, from September 26 through October 24, 2019, because of a bacterial contamination.  During the 28-day water outage, patients at Saint Elizabeths were left in unconscionable conditions:  patients in need of intensive psychiatric care were denied treatment and patient health and safety were compromised by unsanitary conditions.  *See generally* Compl. ¶¶ 39-83.  The lack of running water at Saint Elizabeths deprived patients of the care that medical professionals have determined is necessary to protect and improve their mental health.  The Plaintiffs were not able to receive their prescribed care, including various types of therapy.  Compl. ¶¶ 47-52.  Further, Defendants subjected Plaintiffs to unhygienic and dangerous conditions, including overflowing toilets and severely limited access to showers.  Compl. ¶¶ 53-76.

This was the second prolonged outage of water and interruption of care at the facility in the last three years. Compl. ¶ 1, 36. On August 6, 2016, a broken water main pipe contaminated the water supply at Saint Elizabeths. When the water supply to the facility was disrupted in 2016, patients were unable to wash their hands for five days and unable to drink out of the taps for six days.  Joshua Kaplan, *Saint Elizabeths Hospital is Expecting Up to 17*

*Days Without Running Water*, Washington City Paper, Oct. 2, 2019, https://www.washingtoncitypaper.com/news/city-desk/article/21090377/saint-elizabeths-hospital-is-expecting-up-to-17-days-without-running-water.

On the day this lawsuit was filed — October 23, 2019 — Defendants claimed that they were restoring running water at the Hospital.  The Defendants now claim that the restoration of water fully moots the case and strips the plaintiffs of standing, relying heavily on the Declaration of K. Singh Taneja.  The facts are not so simple.

First, Mr. Taneja's declaration has no representations regarding Defendants' actions to discover and redress the conditions that led to the water crisis.  Decl. of K. Singh Taneja.  Defendants have given no assurances that they are conducting water tests, routine or otherwise, for the bacterial contaminations at the heart of this lawsuit.  Defendant Barbara Bazron, Department of Behavioral Health Director, testified at a D.C. Council oversight hearing on November 20, 2019 and did not provide satisfactory answers on how the agency is preventing the water contamination from happening again.   Joshua Kaplan, *Mental Health Agency Director Finally Answers For the Water Crisis At St. Elizabeths Hospital*, Washington City Paper, Nov. 21, 2019, https://www.washingtoncitypaper.com/news/city-desk/blog/21102692/mental-health-agency-director-finally-answers-to-the-public-for-water-crisis-at-st-elizabeths-hospital.[1]    The District has not offered any explanation for the presence of three bacteria – legionella, pseudomonas, and E.coli – found in the facility's water supply in September 2019 or evidence consistent with their assertion that "there is no reasonable expectation that the alleged violation will recur." Mot. 8.

---

[1] Neither the written testimony nor a recording nor the public testimony of Director Bazron is available on the D.C. Council's website.  Council of the District of Columbia, Health Public Oversight Hearing, https://dccouncil.us/event/health-public-oversight-hearing-8/ (last visited December 20, 2019).

For example, an adequate system of prophylactic planning and checking could include the identification of patients at particular risk of disease and if possible assigning these individuals in areas that are least likely to have biofilm in the plumbing system, such as at the beginning of the line; the periodic retesting of the water at the far ends of the plumbing system for biofilm producing organisms; frequent monitoring of the water at the distal end of the building's distribution system to ensure free chlorine residual; and a review of the the physical condition of the plumbing system to eliminate dead-legs, poorly installed piping and unused piping, so that if any unused piping is found, periodic flushing of these lines, and if necessary, disinfection to ensure non-buildup of biofilm can be conducted.[2]  Defendants have not suggested that any of these measures – or any measures – are in place.

Mr. Taneja's declaration is also inconsistent with other public and private information the Plaintiffs have, as well as a number of assertions in the Defendants' Motion.  For example:

- Mr. Taneja asserts "on October 23, Saint Elizabeths began normal water usage throughout the facility."  Decl. 8.  Plaintiffs and others have stated that there continued to be restrictions on water use and bathrooms after October 23.

- Mr. Taneja asserts "since October 23, 2019, no new water restrictions have been imposed on any part of the facility for any amount of time."  Decl 11.  Plaintiffs are aware of information that water was shut off on November 1 in at least one unit of the Hospital.

- Mr. Taneja states "no patients or staff fell ill as a result of the incident."  Decl 11.  But Saint Elizabeths staff reported that some patients contracted pink eye.during the outages and many patients, including the Plaintiffs, were negatively impacted by the disruption in their mental health care during the prolonged outage. Joshua Kaplan, *Saint Elizabeths Hospital is Expecting Up to 17 Days Without Running Water*, Washington City Paper, Oct. 2, 2019, https://www.washingtoncitypaper.com/news/city-desk/article/21090377/saint-elizabeths-hospital-is-expecting-up-to-17-days-without-running-water.

- The Defendants assert that a decision was made "to lift the water restrictions at Saint Elizabeths the same evening the lawsuit was filed" citing paragraphs 7 and 8

---

[2] These observations are by Forensic Sanitarian Robert W. Powitz, PhD, MPH, RS, DLAAS.

of the Taneja Declaration. Mot 8.  But that is not what the Taneja Declaration says.  Plaintiffs have information that the water restrictions were not fully lifted, including being instructed not to drink the water or brush their teeth by Hospital staff, and being provided with bottled water.  Indeed, Mr. Tajeda notes that "all normal water usage" was not restored until October 28.

## ARGUMENT

While it is ordinarily the burden of a plaintiff to prove that a court has subject-matter jurisdiction, when mootness is at issue, "[t]he initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot[.]" *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citation omitted). And in determining whether to dismiss a claim as moot under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true ... and must grant plaintiff[s] 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting *Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979)).

On the merits of Defendants' mootness argument—that the challenged conduct has ended and will not recur—the law is established that "a party's voluntary cessation of challenged conduct will not moot a case unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC), Inc., 528 U.S. 167, 189 (internal quotation marks omitted). Defendants' motion to dismiss does not remotely approach the showing they must make.

There is a fundamental disconnect between the Defendants' "nothing to see here, move along" position and their lack of transparency about (i) how the problem occurred, (ii) why significant water outages keep occurring – two in three years, (iii) how these outages have impacted patient care, (iv) what steps they have taken to ensure there will be no similar outages or interruptions of patient care in the future, and (v) how they can be so confident that they are

correct, to the point of suggesting there should be no scrutiny of their actions. The answers to all of these questions, which go to the heart of Defendants' assertion of mootness and lack of redressability, are exclusively in Defendants' custody and control.

"The Federal Rules of Civil Procedure generally provide for liberal discovery to establish jurisdictional facts." *Goodman Holdings v. Rafidain Bank,* 26 F.3d 1143, 1147 (D.C.Cir.1994) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 & n. 13 (1978)).  Where a plaintiff can "demonstrate[] that it can supplement its jurisdictional allegations through discovery, ... jurisdictional discovery is justified and should [be] afforded." *Gorman v. Ameritrade Holdings, Inc.*, 293 F.3d 506, 513 (D.C. Cir. 2002) (collecting cases).  In assessing the Plaintiffs' request, courts in this circuit have adopted a "good faith" standard that Plaintiff has a "good faith belief that such discovery will enable it to show" the court has jurisdiction. *Diamond Chemical v. Atofina Chemical,* 268 F.Supp.2d 1, 15 (D.D.C. 2003) (citing Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C.Cir.1998)).

Here, discovery is likely to allow Plaintiffs to successfully rebut Defendant's assertions with regard to mootness and standing. Defendants make a number of assertions that can be directly tested by allowing plaintiffs to conduct discovery.  For example, Defendants contend:

- "there is no reasonable expectation . .. that the alleged violation will recur."  Mot. 8. Plaintiffs proposed discovery is targeted to the genesis of the two prolonged water outages in the last three years, the efforts to remediate those crises, and specific steps that have been taken that will ensure there are either no future outages, or that future outages will not fundamentally interrupt patient care.

- "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Mot. 8.  Plaintiffs have proposed targeted discovery into the impact the last two major outages have had on the provision of mental and other health care, and the ongoing impact on the patient population.

- the restoration of services was "for reasons wholly independent of litigation."  Mot. 8. Plaintiffs have proposed targeted discovery into the Defendants' knowledge that litigation

was imminent, as well as the delay between the filing of the lawsuit on October 23 and Mr. Tejeda's statement that "all normal water usage has been restored" on October 28.

- "plaintiffs cannot establish a likelihood of recurrence. . . ." Mot. 10.  Plaintiffs have proposed targeted discovery regarding the two prolonged outages in the last three years, as well as any other outages of shorter duration, and the effectiveness of the remediation that may prevent or reduce the duration of future water outages resulting from Defendants' use of an antiquated plumbing system.

- "plaintiffs have not alleged that any likely recurrence will injure them in the same way." Mot. 11.  Plaintiffs have proposed targeted discovery regarding how the last two outages have impacted patient care, as well as the remediation and any changes to the emergency water plan that may impact future patient care during future outages.

Each of these issues goes to the heart of Defendants' mootness and standing arguments and Plaintiffs assert with good faith that this discovery certainly could produce facts that would affect the court's jurisdictional analysis.  For example, if there have been additional outages, even of short duration, that is relevant to the question whether there is risk of recurrence.  Similarly, evidence that there is no emergency water protocol or that there have been no changes to the emergency water protocol or what those changes are, would speak to whether patient care may be impacted in the future in a similar manner as the last two water outages.  Discovery that the water was restored prematurely in anticipation of this lawsuit, without testing locations where there had been prior indicia of bacterial contamination would undermine Defendants' argument that the decision to restore water was completely independent of this litigation, as well as whether the Defendants have "completely eradicated the effects of the alleged violation." Mot. 8.

## CONCLUSION

For the reasons given above, the Court should grant Plaitniffs' motion.  The topics for the requests for production that Plaintiffs wish to be authorized to serve are appended hereto.  Plaintiffs request that these documents be produced within three weeks of granting the Motion,

and that further briefing on the Defendants' motion to dismiss, including Plaintiff's response to the motion to dismiss, be due two weeks after Defendants have completed production.

Dated:   December 20, 2019               Respectfully submitted,

/s/ Kaitlin Banner
Kaitlin Banner (D.C. Bar No. 1000436)
Margaret Hart (D.C. Bar No. 1030528 )
Hannah Lieberman (D.C. Bar No. 336776 )
Jonathan Smith (D.C. Bar No. 396578 )
Maria Morris*
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
Kaitlin_banner@washlaw.org
margaret_hart@washlaw.org
hannah_lieberman@washlaw.org
jonathan_smith@washlaw.org
maria_morris@washlaw.org


John A. Freedman (D.C. Bar No. 453075)
Tirzah S. Lollar (D.C. Bar No. 497295)
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
John.Freedman@aporter.com
Tirzah.Lollar@arnoldporter.com

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800

aspitzer@acludc.org
smichelman@acludc.org
mperloff@acludc.org

*Admitted to practice law in Alabama, New York, and California. Practicing under the supervision of DC Bar members.

## APPENDIX A
### Requests for Production of Documents

- a copy of any emergency water protocol or procedures in effect during the two most recent major water interruptions, as well as any changes or proposed changes to those protocols or procedures;
- any reports, analyses, or assessments of the origin of the last two major water interruptions;
- any reports, analyses, or assessments of the impact of either of the last two major water interruptions on hygienic conditions or patient care;
- any reports, analyses, or assessments of the effectiveness of the remediation of the last two major water outages to prevent future water interruptions or impact on hygienic conditions or patient care;
- any proposals or recommendations for remediation to ensure that there will be no future major water interruptions or impact on hygienic conditions or patient care from any future water interruptions;
- documents reflecting any water shutoffs or restrictions anywhere in the facility for any amount of time since October 23;
- documents reflecting any impact on patient care from the most recent major water interruption on patient care since October 23;
- documents reflecting awareness that Plaintiffs would be filing suit prior to commencement of this proceeding; and
- reports, analyses, or assessments concerning any interruption in the provision of psychiatric and mental health care since October 23.

## CERTIFICATE OF SERVICE

     I hereby certify that on this December 20, 2019, a copy of the foregoing Motion for Leave to Conduct Jurisdictional Discovery was served on the Defendants via ECF.

                                      */s/ Kaitlin Banner*
                                      Kaitlin Banner