UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENZO COSTA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>Defendants. | Civil Action No. 19-3185 (RDM) |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

### INTRODUCTION

Plaintiffs initiated this action last fall in the wake of a water outage at Saint Elizabeths Hospital (Saint Elizabeths, or the Hospital), arguing that the conditions at the Hospital during the outage violated plaintiffs' statutory and constitutional rights. Now, plaintiffs seek to amend their Complaint by adding claims pertaining to a public health emergency—the COVID-19 global pandemic—that began several months after water service at Saint Elizabeths was fully restored. The District of Columbia (the District)[1] recognizes plaintiffs' concerns for patients at Saint Elizabeths and agrees that their health and safety during this pandemic are important. Nevertheless, plaintiffs' request to amend their Complaint to include new factual allegations and legal claims unrelated to their initial filing should be denied.

---

[1] Defendants are the District, Department of Behavioral Health Director Barbara Bazron (in her individual capacity), and St. Elizabeths CEO Mark Chastang (in his individual capacity) (collectively, the District).

Permitting the addition of these factual allegations to the current lawsuit—including a new claim for a writ of habeas corpus—would fundamentally change the scope and nature of the case, rendering the pending motion to dismiss moot, delaying resolution of the operative Complaint on the merits and subjecting the District to undue prejudice. If plaintiffs wish to raise these additional claims, they should do so in a separate action. Accordingly, plaintiffs' motion should be denied.

## BACKGROUND

This lawsuit arose from plaintiffs' allegations related to a temporary water outage at Saint Elizabeths in the Fall of 2019. *See* Compl. [1] ¶¶ 1-4. Plaintiffs filed the putative class action on October 23, 2019, seeking declaratory and injunctive relief. *See id.* ¶¶ 111-17. Plaintiffs alleged that the water outage was "the second time in three years that Saint Elizabeths Hospital has experienced an extended water outage." Compl. ¶ 36. The Hospital, however, began restoring water service the same day the Complaint was filed, and the District then moved to dismiss on December 16, 2019, based on mootness and failure to state a claim. *See* Mem. in Support of District's Mot. to Dismiss (Defs.' MTD Mem.) [21-1].

On April 16, 2020, nearly six months after water service was fully restored to Saint Elizabeths, plaintiffs moved for an emergency hearing and for leave to amend their Complaint based on new allegations related to the Hospital's response to the COVID-19 pandemic. *See* Pls.' Mot. [36]; Proposed Am. Compl. [36-1]. In their motion, plaintiffs allege that the District's response to the pandemic "is the third time in recent years" that it has taken an unsatisfactory response to an emergency situation. Pls.' Mot. at 1. The Court held a hearing on April 17, 2020, and directed the District

2

to respond to plaintiffs' motion for leave to amend by 10:00 a.m. on April 21, 2020. Plaintiffs have since filed a motion for a temporary restraining order, which the District will oppose by April 21, 2020, at 4:00 p.m.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 15(a)(2), a party can only amend its pleadings with the opposing party's written consent or by leave of the Court. Similarly, Rule 15(d) permits the Court "on just terms" to allow "supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Courts typically resolve motions to supplement under Rule 15(d) and motions to amend under Rule 15(a) under the same standard." *Thorp v. District of Columbia* 325 F.R.D. 510, 513 (D.D.C. 2018). The decision whether to grant or deny leave "is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). But "[w]here … the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Pinson v. Dep't of Justice*, 246 F. Supp. 3d 211, 231 (D.D.C. 2017) (quoting *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012)).

## ARGUMENT

I. **The Court Should Deny Leave to Amend Because the Proposed Amended Complaint Would Alter the Nature and Scope of the Case and Bears No More Than a Tangential Relationship to the Original Action.**

Plaintiffs seek to amend their Complaint "to add additional factual allegations pertaining to Defendants' failure to provide sufficient medical and/or mental health care to Saint Elizabeths patients during the ongoing COVID-19 pandemic." Pls.' Mot.

3

at 4. Plaintiffs' new allegations center on whether the Hospital is following CDC guidelines on measures such as testing patients and staff, isolating symptomatic individuals and implementing social distancing procedures. *Id.* at 3-4. These allegations are factually unrelated to the Fall 2019 water outage and would fundamentally change this lawsuit into a proceeding about the COVID-19 pandemic.

It is well established that when "the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Pinson*, 246 F. Supp. 3d at 231; *see also Wolf v. C.I.A.*, 569 F. Supp. 2d 1, 11 (D.D.C. 2008) (same). Plaintiffs seek to add dozens of pages of factual allegations about a pandemic that is occurring months after the events originally giving rise to their lawsuit. *See* Proposed Am. Compl. ¶¶ 37-122. Plaintiffs attempt to tie the two events together by labelling the Fall 2019 water outage as a "public health emergency." *See* Pls.' Mot. at 1-2. A "public health emergency," however, is a formal designation requiring an order by the Mayor. *See* D.C. Code § 7-2304(a) (requiring Mayoral declaration with specific contents to establish public health emergency in the District). The Mayor declared a public health emergency based on the COVID-19 pandemic on March 11, 2020. Mayor's Order 2020-046, March 11, 2020, available at https://mayor.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachments/MO.DeclarationofPublicHealthEmergency03.11.20.pdf. No public health emergency was declared for the water outage, nor did the event fit the criteria for such a declaration. *See* D.C. Code § 7-2304(a).

Regardless of how the events are labelled, a temporary water outage and a global pandemic are hardly analogous; each poses fundamentally different risks and requires an entirely different set of responses. Plaintiffs implicitly acknowledge this by raising different concerns and requesting wholly different forms of relief distinct to each type of crisis, yet lump unrelated factual allegations together as if they could be remedied together. *See, e.g.*, Proposed Am. Compl. ¶ 193 (alleging lack of access to running water during outage and insufficient PPE and social distancing measures during pandemic).[2]

Although plaintiffs rely on some of the same statutory and constitutional provisions for their new claims pertaining to the COVID-19 crisis, that is not a sufficient ground for the Court to grant leave to amend. *Caton v. Barry*, 500 F. Supp. 45 (D.D.C. 1980), is instructive on this point. In *Caton*, residents of a homeless shelter, Hartford Street, sought to prevent the District from closing the shelter and transferring them to other locations. *Id.* at 48. Among other things, the plaintiffs argued that the living conditions to which they would be subject at the other shelters violated their substantive Due Process rights under the Fifth Amendment. *Id.* at 48, 51. The plaintiffs sought leave to amend their complaint to add residents of another shelter, Parkside, as plaintiffs. *Id.* at 48.

The Court denied the plaintiffs' motion on the grounds that adding the Parkside residents' claims—even under the same statutory and constitutional

---

[2] As discussed in the District's forthcoming opposition to plaintiffs' motion for a temporary restraining order, many of plaintiffs' specific allegations pertaining to the pandemic response are not true.

5

provisions—"would substantially alter the character and scope of the proceedings." *Id.* at 54. The Court reasoned that, "the claims of the Parkside residents involve discrete questions of fact unrelated to the plan to close Hartford Street and only tangentially relate[] to the instant proceeding." *Id.* Ultimately, the Court concluded that adding these claims would prejudice the defendant because it would require additional factfinding and substantially delay the resolution of the case. *Id.* As discussed below, *see* Section II, the same is true of plaintiffs' new allegations here.

In addition, plaintiffs' Proposed Amended Complaint not only raises new factual allegations that are unrelated to the present case, it also adds a claim for a writ of habeas corpus under 28 U.S.C. § 2241. Specifically, plaintiffs request that the Court require the District to release "a sufficient number of patients" to allow the remaining patients to practice social distancing, and "enable the staff to maintain the hospital in a safe and healthy condition." Proposed Am. Compl. ¶ 236. By including a habeas claim based on the conditions at the Hospital since the beginning of a pandemic that started months after the water crisis ended, plaintiffs seek to "transform their case into something entirely new." *Miss. Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991). If plaintiffs wish to raise this new claim, they "must bring a new case." *Pinson*, 246 F. Supp. 3d at 232.

## II. The District Will Suffer Undue Prejudice if the Court Grants Leave to Amend.

Plaintiffs argue that amending their Complaint would not prejudice the District "because it does not substantially change the theory on which the case is proceeding or require the District to engage in significant new preparation." Pls.' Mot.

at 5 (citing *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006)). That is incorrect. The case plaintiffs cite for that proposition, *Djourabchi*, was one in which the plaintiffs sought to add new claims based on the same factual allegations—a scenario far different from the one here.

The plaintiffs in *Djourabchi* initially raised breach of contract and unfair trade practice claims related to the defendant's performance of a home improvement contract. *Djourabchi*, 240 F.R.D. at 8. In their motion for leave to amend, the plaintiffs sought to add a claim—based on the same facts in the original complaint—that the defendant had also made false misrepresentations to the plaintiffs. *Id.* at 13. The Court held that the proposed amendment would not substantially change the theory on which the case was proceeding because the plaintiffs had "already filed in their original complaint the facts upon which the[ ] theories of recovery [were] based." *Id.*

In *Caton*, the Court concluded that denying leave to amend would not cause substantial harm to the plaintiffs because they were free to bring their claims in a new action. *Caton*, 500 F. Supp. at 54. Here, too, plaintiffs can file their additional claims in a separate action. Furthermore, requiring plaintiffs to do so would not cause them to suffer substantial harm. *See Wolf*, 569 F. Supp. 2d at 11 (noting that "plaintiff will not suffer prejudice" from denial of motion for leave to amend because "he remains free to raise the[ ] new claims in a separate lawsuit.").

Granting plaintiffs' motion here would be especially prejudicial to the District because it would "further complicate and lengthen" a lawsuit of already questionable merit. *Thorp*, 325 F.R.D. at 514. The District has outlined the many shortcomings of

plaintiffs' lawsuit in its motion to dismiss. *See generally* Defs.' MTD Mem. (raising issues of mootness, standing, and the failure to state a claim on which relief could be granted). Plaintiffs should not be granted leave to amend.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Motion for Leave to File an Amended Complaint.

Dated: April 21, 2020.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Micah Bluming*
MICAH BLUMING [1618961]
HONEY MORTON [1019878]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov
honey.morton@dc.gov

*Counsel for Defendants*