**Declaration of Dr. Marc Stern**

I, Marc Stern, submit the following supplemental declaration assessing the measures described by the District of Columbia Department of Behavioral Health to respond to the COVID-19 pandemic.

I declare as follows:

1. I am a physician, board-specialized in internal medicine, specializing in correctional health care. I most recently served as the Assistant Secretary for Health Care at the Washington State Department of Corrections. I also have considerable familiarity with the immigration detention system. I served for four years as a medical subject matter expert for the Office of Civil Rights and Civil Liberties, U.S. Department of Homeland Security, and as a medical subject matter expert for one year for the California Attorney General's division responsible for monitoring the conditions of confinement in ICE detention facilities. My CV was submitted along with the first declaration I submitted for this case.

2. I have reviewed the following declarations in connection to this case:
   a. Declaration of Yi Ling Elaine Tu
   b. Declaration of Philip Candilis
   c. Declaration of Richard Gontang
   d. Declaration of Martha Pontes
   e. Declaration of Renee Bivens

3. Following the recommendations of CDC and other public health authorities with regard to preventive measures only *decreases* the risk of introduction and spread of coronavirus in a congregate setting. In such settings, no realistic amount of social distancing, disinfection, and other preventive measures renders the level of risk equal to that in an individual's home. Thus, even if the government is executing all the steps it describes, and is doing so effectively, without flaw or occasional lapse, patients at Saint Elizabeths remain at heightened risk of infection of COVID-19.

4. The CDC recommendations take a harm reduction approach, a common practice in public health guidance. The harm reduction approach recognizes that though there is an appropriate and safe way to address a public health problem, people do not always do things in that way, and so provides guidance on how to reduce risk of harm even when not following the appropriate practices. For example, the CDC guidance, like public health guidance everywhere, states that social distancing should permit six feet or more of social distancing between sleeping quarters, but also states that such distancing should be provided "if space allows." This does *not* mean that it is safe to have less than six feet of social distance in a detention center, and in fact a congregate setting that does not allow for such social distancing is not a safe one and is likely to facilitate the spread of COVID-19. Saint Elizabeths should therefore be following the strictest guidance regarding isolation, quarantine, and social distancing that it is able to do. If they are unable to follow the strictest guidelines, there should be reasonable justification. Following a less strict guideline may reduce harm but still places patients at a significant risk.

5. Saint Elizabeths officials are to be commended for taking any steps to reduce the spread of virus in its facility. However, based on the declarations I reviewed, it is my professional opinion that their response plan places patients at Saint Elizabeth's at heightened risk of contracting COVID-19 because it (1) may be failing to effectively isolate COVID-19 positive patients; (2) fails to safely release patients under investigation for COVID-19 ("PUI") from isolation; and (3) fails to safely admit patients transferring from non-clinical settings. I describe each of these in detail below.

6. COVID-19 positive patients or PUI patients should be isolated from any patients who do not have COVID-19 and from each other. If the facility is unable to follow this public health principle of isolation, in the interest of harm reduction, the CDC recommends that patients maintain social distancing and wear appropriate PPE. According to the declarations I reviewed, it is unclear how Saint Elizabeths is managing COVID-19 patients who are in "isolation units" IB and 2A or PUI unit 2TR. Saint Elizabeth should ensure that each patient has a separate room and bathroom and if they must be outside their rooms temporarily, that they wear masks and maintain an appropriate distance (six feet) from others. To the extent that Saint Elizabeths is not doing this and instead is following one of the CDC's lesser "harm reduction" approaches, it heightens the risk to patients and staff.

7. Symptomatic patients who have symptoms but who test negative for the new coronavirus should not be released from the PUI Unit based solely on one (COVID-19) test result. The declaration I reviewed suggest that this is what Saint Elizabeths is doing. There is a high rate of false negatives and decisions should be made based on a full clinical evaluation of the patient.

8. Patients at Saint Elizabeths who are exposed to COVID-19 but not symptomatic should be quarantined separately from patients who are in isolation (COVID-19 positive and PUI patients). There is not sufficient information in the declarations I reviewed to ascertain how Saint Elizabeths is quarantining exposed patients. If they are not properly quarantining exposed patients, this heightens the risk that these patients will spread COVID-19 to other patients and staff or themselves be placed at elevated risk.

9. To the extent possible, staff should not rotate among units housing confirmed positive cases, symptomatic (PUI) cases, exposed cases, and non-cases. If staff must rotate among units, staff must rigorously follow all CDC guidelines regarding the use of PPE and proper hygiene.

10. Saint Elizabeths cannot maintain a safe environment if it does not identify and quarantine newly admissions who may be infected. Saint Elizabeth appears to be doing this in a reasonable manner for patients who are coming from community hospitals. Patients coming from other, less clinical sources, such as the street, court, or DOC, should be quarantined for 14 days. From the declarations I reviewed, it does not appear that Saint Elizabeths is doing this.

11. Patients should wear masks in accordance with local Department of Health policies and in accordance with CDC guidance. Masks should be given to all patients. Patients should be educated on why and how to use makes and should be strongly encouraged to wear masks

at all times and especially when they are unable to maintain an appropriate distance from other patients.

Executed on April 22, 2020.

_____
Marc Stern, MD MPH