**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ENZO COSTA, *et al.*,

     *Plaintiffs*,

v.

DISTRICT OF COLUMBIA, *et al.*,

     *Defendants*.

No.  1:19-cv-3185 (RDM)

## JOINT STATUS REPORT

Pursuant to the discussion at the April 24 hearing and the Court's April 24 Minute Order, the Parties submit this joint status report.

## UPDATE ON DISCUSSIONS

1.     Pursuant to the Court's April 24 Order, the Parties met and conferred on April 27 at 10 am.

2.     In advance of these discussion, on the evening of April 24, Plaintiffs sent Defendants an email inquiring as to the members and qualifications of Dr. Lacey's Commission, their investigative scope, and expected timing to complete their investigation.  Defendants acknowledged the request on the afternoon of April 25.

3.     During the 10 am meet and confer, Defendants indicated that they were gathering information regarding Dr. Lacey's Commission.

4.     During the 10 am meet and confer, Defendants indicated that they were prepared to provide Plaintiffs with daily reports on certain of the information sought in Plaintiffs' revised proposed order (ECF No. 53-3) including the daily census of patients by unit, the number of

admissions, and the number of patients with each COVID-19 status and the number in quarantine or isolation status.  The Parties agreed to discuss further questions of how this data could be presented consistent with patient confidentiality concerns, as well as Plaintiffs' requests for staff census information, patient evaluation and discharge information, and the complaints reported to the Hospital's patient advocate.

5.      Later in the 10 am discussion, Plaintiffs noted that to the extent factfinding would be conducted, it was important that the factfinders be qualified to advise the Parties and the Court both regarding 1) public health issues (particularly with regard to prevention of COVID-19 spread) and 2) mental health treatment, that these issues may need to be assessed by different experts, and that the experts be in a position to conduct their initial assessment and advise the Court quickly.  Plaintiffs also reported that in addition to Ms. Gouse, they were checking with local public health experts who might be available to assist with this effort.

6.      In response, Defendants noted that while they do not concede further factfinding, in the event the Court orders factfinding, it is important to the Defendants that any factfinding be conducted by independent and neutral experts, and that Dr. Lacey's Commission should not be tasked with such factfinding in this case.  Defendants also reported that they were checking with several local infectious disease and mental health experts who might be available to assist with this effort in the event the Court orders such factfinding.

7.      Following the 10 am meet and confer, Defendants provided additional information regarding the reporting that Defendants agree to provide to Plaintiffs:

      a.   With regards to complaints to the patient advocate, the Parties are in agreement that Defendants will provide the number of complaints to the advocate as part of the twice weekly report to this Court and that Defendants

will provide the general subject of any complaints directly to Plaintiffs by email twice per week, on the same day the report is filed.

b. With regards to the daily patient census, the Parties are in agreement that the Defendants will provide the following information to Plaintiffs daily:  (1) number of patients in each unit; (2) number of admissions; (3) number of COVID-19 positive patients; and (4) number of patients suspected of having COVID-19.  Plaintiffs expressed their concerns that this data may not be sufficient to capture information regarding patient movement on to or off a PUI unit and patient movement on to or off COVID positive units and reserve the right to request supplemental information to this point.

c. With regards to the staff census, Defendants have stated that compiling the staffing-related information plaintiffs have requested would pose a significant burden and will not be provided at this time.

d. Defendants did not address Plaintiffs' request for information about patient evaluation and discharge recommendations. Defendants believe this information is sufficiently addressed in the record.

8. The Parties agree that there has been significant narrowing of the issues, and that the open issues can be addressed at tomorrow's status conference.

9. The Parties respective positions are set forth below.

**PLAINTIFFS' POSITION**

1. Since the Plaintiffs filed the Amended Complaint on April 16, the number of positive COVID-19 cases at Saint Elizabeths has increased by 26 – from 84 to 117 (48 patients and 69 staff).  The Hospital has now reported nine patient deaths.

2.      Since the Court issued the April 25 temporary restraining order (ECF No. 59), the Defendants report that they have implemented universal quarantine precautions on all units.

3.      Plaintiffs believe that appointment of an independent factfinder or factfinders who can inspect Saint Elizabeths Hospital and report back to the Court is important for at least two reasons.

4.   First, given the rapid spread of COVID-19 throughout the facility, Plaintiffs believe it would be prudent to have independent confirmation that the Court's April 25 temporary restraining order has been implemented.

5.   Second, there is a factual dispute between the parties as to the degree to which Defendants have been able to implement their COVID-19 prevention strategies and the provision of mental health care during the crisis.

6.   Plaintiffs submitted declarations with accounts from 13 different patients describing insufficient adherence to CDC and other public health policies regarding evaluating patients for COVID-19 symptoms, social distancing, use of masks, use of other protective equipment, and availability of hygienic materials.  *See* ECF No. 39-6, 39-7, 39-8, 39-9, 39-10, 39-11, 46-3, 46-4 & 47.  These are critical measures necessary to reduce risk of COVID-19 transmission.  To the extent that the Defendants are not properly implementing CDC guidance on these measures, that deficiency should be remedied immediately.

7.   Similarly, Plaintiffs have raised significant questions as to the provision of adequate mental health care during the crisis and whether patients from Saint Elizabeths can be discharged to community-based placements.  *See* ECF No. 39-2, 39-6, 39-7, 39-8.

8.  In light of similar factual disputes, Judge Kollar-Kotelly ordered an inspection of the D.C. jail to assist the Court in determining whether to grant relief and how that relief could be tailored.  *See Banks v. Booth*, 2020 U.S. Dist. LEXIS 68287 (D.D.C. April 19, 2020) (Civil Action No. 20-849(CKK)).

9.  Plaintiffs will be prepared to address potential candidates to conduct the inspection at the April 28 status conference.

10.  Plaintiffs have also raised significant questions regarding the staffing of Saint Elizabeths Hospital during the crisis and the necessity of sufficient staff to provide safe care to isolated and quarantined patients and to provide appropriate mental health services.  *See* ECF 39-2, 39-3.  Plaintiffs believe that this data is critical to evaluating Defendants' ability to comply with the temporary restraining order and to ensure Plaintiffs' health and well-being.

11.  Plaintiffs have also raised significant questions regarding the Defendants' evaluation and recommendation to discharge patients to community-based placements during the crisis.  *See* ECF  39-2, 46-1.  Plaintiffs believe that this data is critical to evaluating Defendants' ability to ensure Plaintiffs' health and well-being.

12.  In addition to the issues regarding inspection and reporting, Plaintiffs will be prepared to address (i) whether any further Court action is necessary regarding Defendants' reporting, (ii) what discovery may be appropriate in advance of the expiration of the temporary restraining order on May 8, and (iii) a plan to litigate the remaining issues in the case.

## DEFENDANTS' POSITION

Prior to entering a TRO, the Court narrowed the issues to those that it determined were the most urgent. Staffing and community placements were not part of that order. The Court's order is now in effect until May 8, 2020, and the District's first biweekly report is due tomorrow,

April 28, 2020. Any concerns plaintiffs have regarding the sufficiency of the information in the report should be addressed after the report is submitted to the Court. To the extent plaintiffs seek "independent confirmation that the Court's April 25 temporary restraining order has been implemented," any additional factfinding should not begin until Saint Elizabeths has a sufficient opportunity to modify its operations according to the Court's order. The Parties can discuss whether additional factfinding is needed.

As described above, the District has been working to identify possible neutral factfinders. If additional factfinding is ordered through a Court-appointed inspector, the District believes the Parties should have the opportunity to discuss their respective choices with one another and attempt to seek mutual agreement before presenting the Court with any proposals.

Dated:  April 27, 2020                          Respectfully submitted,

KARL A. RACINE                              /s/ Kaitlin Banner
Attorney General for the District of Columbia    Kaitlin Banner (D.C. Bar No. 1000436)
                                            Margaret Hart (D.C. Bar No. 1030528)
TONI MICHELLE JACKSON                    Hannah Lieberman (D.C. Bar No. 336776)
Deputy Attorney General Public Interest      Jonathan Smith (D.C. Bar No. 396578)
Division                                    WASHINGTON LAWYERS' COMMITTEE
                                            FOR CIVIL RIGHTS AND URBAN
/s/ Fernando Amarillas                       AFFAIRS
FERNANDO AMARILLAS [974858]              700 14th Street, NW, Suite 400
Chief, Equity Section                        Washington, DC 20005
                                            Phone: (202) 319-1000
/s/ Micah Bluming                            Fax: (202) 319-1010
MICAH BLUMING [1618961]                  Kaitlin_banner@washlaw.org
HONEY MORTON [1019878]                   margaret_hart@washlaw.org
Assistant Attorneys General                  hannah_lieberman@washlaw.org
441 Fourth Street, N.W., Suite 630 South      jonathan_smith@washlaw.org
Washington, D.C. 20001
(202) 724-7272                               John A. Freedman (D.C. Bar No. 453075)
(202) 730-1833 (fax)                         Tirzah S. Lollar (D.C. Bar No. 497295)
micah.bluming@dc.gov                      ARNOLD & PORTER LLP
honey.morton@dc.gov                       601 Massachusetts Ave., NW
                                            Washington, D.C. 20001
Counsel for Defendants                       Tel.: (202) 942-5000

Fax: (202) 942-5999
John.Freedman@aporter.com
Tirzah.Lollar@arnoldporter.com


Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org
mperloff@acludc.org

Counsel for Plaintiffs