**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ENZO COSTA, *et al.*,

*Plaintiffs*,

v.

DISTRICT OF COLUMBIA, *et al.*,

*Defendants*.

No. 1:19-cv-3185 (RDM)

# JOINT STATUS REPORT

Pursuant to the discussion at the April 28 hearing and the Court's April 28 Minute Order, the Parties submit this joint status report.

## UPDATE ON DISCUSSIONS

1. Pursuant to the Court's April 28 Order, the Parties met and conferred on April 29 at 3 pm

## POINTS OF AGREEMENT AND THE PARTIES' POSITIONS ON AREAS OF DISAGREEMENT

At the April 28 status conference, the Court directed the Parties to answer a series of questions regarding the inspection process. The Parties report on each item below. To the extent there is a disagreement between the Parties, each party's position is set forth below.

1. Candidates for appointment: The Parties agree that it makes sense to select an inspector who has expertise in public health and infectious disease prevention, as well as in mental health issues.

Candidates under Consideration:

- **Dr. Patrick Canavan, PhD.** Dr. Canavan served as the CEO of Saint Elizabeths Hospital until May 2015. As the CEO, he successfully managed the U.S. Department of Justice (DOJ) Settlement Agreement and saw that the Hospital fully complied with the 224 requirements. He has previously worked for the District as an administrator in a variety of other capacities. He is a licensed psychologist in the District of Columbia. A copy of his curriculum vitae is attached as Exhibit A. His rate information will be provided in a supplement to this report. Dr. Canavan would be assisted by individuals in his consulting firm.
- **Joan Hebden, RN, MS, CIC, FAPIC**: Ms. Hebden is a specialist in infection prevention and control. She worked for 28 years as the Director of Infection Prevention and Hospital Epidemiology at the University of Maryland Medical Center, and in that role, oversaw infection control procedures in the hospital's psychiatric wards. She is currently the Nurse Coordinator for the Department of Epidemiology and Public Health. A copy of her curriculum vitae is attached as Exhibit B. Her rate information will be provided in a supplement to this report.
- **Dr. Ronald Waldman, MD, MPH:** Dr. Waldman is an expert in infectious disease with vast experience advising public health entities on the epidemiology, disaster relief, and pandemic response. He is currently on the faculty at the George Washington University. A copy of his curriculum vitae is attached as Exhibit C. Dr. Waldman is willing to donate his services *pro bono*. Because he is in a risk category, Dr. Waldman is conferring with his medical providers whether an onsite visit is advisable; he is also conferring with colleagues about their ability to assist.

Plaintiff's Position:

- Infectious Disease Expert: Both Plaintiffs and Defendants have each identified one infectious disease specialist. Subject to checking his CV, Defendants have not raised any objection to Dr. Waldman, who has had a long and distinguished career on the issues presented by this assignment. Plaintiffs do not have an objection to Ms. Hebden's qualifications to advise the Court on questions of infection control procedures; during her interview, Ms. Hebden disclosed that she has been a contractor for the District. Upon learning this, Plaintiffs requested (but have not yet received) information from Defendants regarding the extent and scope of this work to be able to assess whether it presents an independence issue.

Subject to understanding and reviewing Ms. Hebden's contracts with the District and confirming they do not pose an independence issue, in the spirit of compromise, Plaintiffs agree to joint appointment of Dr. Waldman and Ms. Hebden as the fact-finder on the first set of questions re: COVID prevention and management on the condition that they work together to produce a report for the Court. Given the exigencies and the need for a robust review, Plaintiffs believe that the review warrants two inspectors.

Mental Health Expert: Plaintiffs have offered Dr. Canavan as an expert on the provision of mental health care at the facility during the crisis, and can opine on the adequacy of such treatment, as well as Defendants' process for patient evaluation and discharge for community release. Defendants have not offered an expert, and state that Ms. Hebden can opine on all relevant issues.

As a former long-time employee of the Defendants who ran Saint Elizabeths, Dr. Canavan's knowledge of the facility will allow for a robust and efficient review; given his familiarity with the Hospital, Dr. Canavan can approach this review with sensitivity and effort to

minimize impact on patient care. Defendants' primary objection to Dr. Canavan is that they do not believe questions concerning the adequacy of mental health care should be part of the inspection process. The Plaintiffs have all complained about the curtailment and adequacy of mental health care during the crisis, which is an independent basis for Plaintiffs' request for emergency injunctive relief. *See* ECF 39-1 at 15-16 (collecting record cites), 21, 25, 27-30. During the meet and confer, Defendants also stated that they objected that Dr. Canavan had a close relationship with Ms. Gouse, who has engaged in litigation against the District; Plaintiffs requested Defendants to substantiate their concern, but Defendants have not provided any information. Since the meet and confer, Defendants' concern has now morphed that they are concerned Dr. Canavan could be a witness in this case; Defendants neither explain why that is likely (he left the Hospital in May 2015, several years before any of the relevant events) nor why that would be disqualifying.

Plaintiffs do not agree that Ms. Hebden is qualified to report on the adequacy of mental health treatment and patient evaluation and discharge for community release. She does not have any credentials or experience that would allow her to critically analyze the provisions of mental health care during COVID-19 or the appropriateness of continued commitment to a psychiatric facility. She has never managed a long-term psychiatric care facility and her limited experience as an infectionist in psychiatric facilities was for short-term commitments and in no way qualifies her to evaluate provision of mental health care during the crisis. Plaintiffs also have concerns about her ability to render an independent judgment on these matters; during her interview, she stated that she would defer to the Saint Elizabeths Medical Director's views as to issues regarding the provision of mental health care.

Defendants' Position:

Defendants believe Ms. Hebden's experience in infection control and in-patient psychiatric care would enable her to perform the inspector role unassisted. Defendants note that Ms. Hebden is currently a board member of the Greater Baltimore Chapter of the Association Professional for Infection Control, serves as a consultant for the Maryland Healthcare Commission Project on HAI Data Quality Review and Chart Audit, is an expert in surveillance for healthcare-associated infections and worked with the CDC to develop the current National Healthcare Safety Network standards.

Defendants submit that only one individual should be appointed as an inspector, and Joan Hebden is the appropriate candidate because she has extensive experience in infectious disease control in a hospital setting, including in psychiatric units. As Defendants note below, the inspector should provide fact finding only on the Hospital's response to the COVID-19 pandemic and not on the adequacy of psychiatric care. Additionally, as a former recent CEO, Dr. Canavan could later be called as a witness in this case.

2. Payment: The Parties agree that the fees and costs for appointed experts should be split evenly.

3. Status of the Inspector(s) (*Amicus*, Court-appointed, etc.):

Plaintiffs' Position: It is Plaintiffs' position that the inspector(s) can be appointed as *amici curiae* or appointed under Rule of Evidence 706 to provide information to the Court. Plaintiffs also believe that the inspection should address both the adequacy of COVID-19 prevention measures and the provision of mental health care during the crisis. In the amended

complaint and in the request for emergency injunctive relief, Plaintiffs detailed the curtailment of care, as well as the Defendants' failure to provide adequate virtual or telemedicine alternatives.

Defendants' Position: It is Defendants' position that the inspector or inspectors should be appointed solely as *amici curiae* to provide the Court with factual findings. Defendants maintain that the role of the inspector is to determine the adequacy of COVID-19 prevention measures, not to provide opinions about appropriate psychiatric care.

4. Form and Timing of Reporting and Inspector Presentation: The inspector(s) should provide an oral report with factual findings and recommendations to the Court on key questions on May 6 or May 7, or at a time that appears feasible given the time requirements of a full fact-gathering process. Following that time, the inspector(s) should provide a written report at a time to be set by the Court answering the remaining questions.

5. How the Inspector(s) will Conduct the Investigation:

a. The inspector(s) shall be jointly instructed by the Parties that the inspection shall be comprehensive, but is to be conducted non-obtrusively, and with sensitivity and effort to minimize impact on patient care and risk of COVID-19 transmission.

b. The Parties shall be permitted to have *ex parte* communications with the inspector(s) as needed, and at the discretion of the inspector(s).

6. Protocols, Logistics, and Timing of Inspections

a. Records review: Defendants agree to preserve all pertinent documents. To reduce the impact of the inspection on the facility, prior to conducting the on-site inspections, certain materials should be made available to the inspector(s) outside the onsite inspection.

Plaintiffs' position: Defendants shall provide the inspector(s) the materials identified in Exhibit D, as well as other materials requested by the inspector(s). The inspector(s) should be permitted to review all pertinent Department of Mental Health and Saint Elizabeths records and documents, electronic or otherwise in conjunction with their investigation, including records and documents that the inspector(s) did not initially identify. Plaintiffs believe that the previously entered protective order (ECF No. 35) is sufficient to address Defendants' confidentiality concerns.

Defendants' position: It is Defendants' position that Defendants shall provide an *amicus* or *amici* access to any records the Court and *amici* deem necessary to the factfinding process, subject to a forthcoming protective order to which the Parties shall jointly stipulate, and to which *amici* will agree to be bound. Defendants believe the *amicus* can inform the Court and the Parties what necessary materials he or she will need access to, and Defendants will provide those materials expeditiously.

b. Staff interviews: To reduce the impact of the onsite inspection, the Parties agree that interviews do not need to be conducted during the inspection.

Plaintiffs' Position: It is Plaintiff's position that Defendants shall make all appropriate Department of Behavioral Health and Saint Elizabeth's managers and staff available for interviews, including telephonic interviews conducted by the inspector(s).

Defendants' Position: It is Defendant's position that Defendants shall make all appropriate Saint Elizabeths managers and staff available for interviews, including telephonic interviews conducted by *amici*.

c. Inspections: With regard to the onsite inspection, the Parties agree:

i. The inspector(s) shall be permitted to speak with staff and patients in confidence and outside the presence of supervisors and staff.

ii. Sufficient inspection should be made to allow the inspector(s) to make an oral report of their findings and recommendations on or before May 7.

iii. Inspector(s) may take appropriate documentation of items that do not identify patients. Because Saint Elizabeths is a psychiatric hospital, inspector(s) may not photograph or record patients in any way that would identify them.

iv. Any private patient information collected by inspector(s) will be subject to a protective order agreed upon by the Parties.

v. Defendants shall provide inspector(s) with a sufficient supply of full personal protective equipment to safely enable their inspections at the time of those inspections.

Plaintiffs' Additional Position:

vi. Petitioner(s) shall be able to enter Saint Elizabeths facilities unannounced at any time and bring with them equipment necessary to conduct and document their site visits.

vii. Once in the facilities, inspector(s) shall be permitted to inspect areas of the facilities without limitation.

viii. The existing Protective Order in the case (ECF No. 35) is likely sufficient to address Defendants' confidentiality concerns.

Defendants' Position

ix. For the safety of *amici* and patients, *amici* shall be escorted by Hospital staff on patient units.

7. List of Questions the Inspector(s) Should Address/Answer

The Parties agree on the following questions:

**COVID-19 Prevention & Management**

(1) When patients display COVID-19 symptoms, as defined by the CDC and DC Department of Health, are they tested for COVID-19?
  a. What symptoms trigger a test for COVID-19?
  b. How many patients report symptoms but are not tested?

(2) When patients who have not tested positive display COVID-19 symptoms, as defined by the CDC and DC Department of Health, are they isolated from other people?

(3) When patients test positive for COVID-19, are they isolated from patients who have not tested positive? Are they isolated from other patients who have tested positive?

(4) When patients who have not tested positive are exposed to confirmed COVID-19 positive patients, are they isolated from other patients?

(5) What measures is the Hospital taking to isolate patients and prevent the spread of COVID-19 in:
  a. Units housing COVID-19 positive patients?
  b. Units housing COVID-19 suspected patients (PUI units)?
  c. All other units?

(6) What criteria do the Hospital use to release patients from COVID-19 positive isolation, COVID-19 suspected isolation and quarantine from COVID-19 exposure?

(7) In COVID-19 positive units, PUI units, and quarantine units, including any

auxiliary spaces, what are the housing conditions, including bathrooms, common rooms, and dining?

a. Is social distancing possible in common areas in units?
b. What is the approximate size of common areas?

(8) Are staff enforcing social distancing and mask wearing?

a. What kind of masks are patients wearing?

(9) What are the quantities of personal protective equipment and cleaning products in the Hospital stockpile?

(10) How are staff assigned to units? Are staff working on more than one unit on the same day? Are staff working on more than one category of units (COVID-19 positive, PUI, quarantine)? If so, how often are staff moving between units? Do staff who interact with patients have access to, and wear, personal protective equipment (PPE)? What kind of PPE do they wear?

(11) Have staff been properly trained in donning and doffing PPE and are they donning and doffing appropriately?

(12) Do all units have soap and hand sanitizer available?

(13) Do housing units, and particularly common spaces such as bathroom, lounges, and common areas, appear to be sufficiently cleaned?

**Mental Health Care**

(14) What technological assistance, such as a computer and/or iPad or tablet is available to patients for teletherapy and other mental health treatment, and how frequently can patients access it?

(15) What access do patients have to the use of a telephone and is their privacy respected?

Plaintiffs' Position: Plaintiffs have raised significant questions as to the provision of adequate mental health care during the crisis and whether patients from Saint Elizabeths can be discharged to community-based placements. *See* ECF No. 39-2, 39-6, 39-7, 39-8. Plaintiffs specifically asked for emergency relief related to these items. *See* ECF No. 39-13 (Proposed Order). Defendants' proposed questions regarding mental health are not adequate to address these concerns.

Additional Questions Proposed By Plaintiffs Related to COVID-19 Prevention and Management and Provision of Mental Health Care:

(1) How is Saint Elizabeths Hospital being staffed during the COVID-19 state of emergency? Are direct support staff being transferred between units? If so, why and how frequently?

Additional Questions Proposed by Plaintiffs Related to Provision of Mental Health Care

(2) Is the Department of Behavioral Health periodically evaluating every patient for discharge to a community placement, including identifying potential supports in light of the COVID-19 outbreak? Are evaluations and discharge recommendations being expedited where possible? Are barriers to timely and appropriate discharge being addressed?

(3) How are patients receiving the range of treatment modalities specifically required by their treatment plan (or virtual or telehealth alternatives), including individual and group psychotherapy, psychoeducational groups, recreational therapy, creative arts therapies and medication management?

(4) What measures are being taken to meaningfully engage individuals in isolation or quarantine in order to prevent anxiety, boredom, depression, frustration and/or anger at being confined? What options do patients have for engagement and socialization, including recreation and access to the outdoors while following CDC guidelines for social distancing and COVID-19 management?

(5) What actions have been taken in response to patient incident reports and how quickly are the responses provided to the patients?

(6) How often are patients being restrained or secluded? How many patients by unit are restrained or secluded on a daily basis? Who is reviewing the use of seclusion and restraint and the consideration of less restrictive measures? Has the rate of seclusion and restraint changed relative to the pre-COVID period?

Defendants' Position: Defendants object to Plaintiffs' proposed additional questions because they are not at issue in this litigation, not relevant to the emergency relief plaintiffs are seeking, or not in dispute.

**Additional Questions Proposed By Defendants**

(1) What mental health care services do Saint Elizabeths staff provide?

**CONCLUSION**

The Parties are prepared to address any questions at the Court's convenience.

Dated: April 30, 2020 Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Micah Bluming
MICAH BLUMING [1618961]
HONEY MORTON [1019878]
Assistant Attorneys General
ROBERT A. DEBERARDINIS JR. [335976]
Senior Assistant Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov
honey.morton@dc.gov
robert.deberardinis@dc.gov

Counsel for Defendants

/s/ John A. Freedman
John A. Freedman (D.C. Bar No. 453075)
Tirzah S. Lollar (D.C. Bar No. 497295)
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
John.Freedman@aporter.com
Tirzah.Lollar@arnoldporter.com

Kaitlin Banner (D.C. Bar No. 1000436)
Margaret Hart (D.C. Bar No. 1030528)
Hannah Lieberman (D.C. Bar No. 336776)
Jonathan Smith (D.C. Bar No. 396578)
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
Kaitlin_banner@washlaw.org
margaret_hart@washlaw.org
hannah_lieberman@washlaw.org
jonathan_smith@washlaw.org
maria_morris@washlaw.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
aspitzer@acludc.org

smichelman@acludc.org
mperloff@acludc.org

Counsel for Plaintiffs

**EXHIBIT D**

Plaintiffs' Proposed Records to be Provided by Defendants

1. Saint Elizabeths Hospital Polices & Procedures
2. Restraint and seclusion reports from March 1 through the present date
3. Patient incident reports from March 1 through the present date
4. Full access to patient medical records (Avatar)
5. Hospital daily reports from March 1 through the present date
6. Daily staffing reports from March 11 through the present date
7. Access to Saint Elizabeths Hospital surveillance video from March 25 through the present date