UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENZO COSTA, *et al.*,<br><br>        Plaintiffs,<br>    v.<br><br>BARBARA BAZRON, *et al.*,<br><br>        Defendants. | Civil Action No. 19-3185 (RDM) |

## JOINT STATUS REPORT

Pursuant to the Court's Minute Order of May 7, 2020, the Parties submit this joint status report. The Parties met and conferred on May 8 about their respective positions on extending the Court's temporary restraining order (TRO) [60] beyond May 11, 2020, and discussed a schedule for further proceedings. The Parties' respective positions are as follows.

### PLAINTIFFS' POSITION

1.      During the meet and confer, the Plaintiffs asked Defendants to agree that the Temporary Restraining Order should be extended until the completion of briefing on Plaintiffs' forthcoming motion for a preliminary injunction.  Plaintiffs specifically proposed that the Temporary Restraining Order be extended until the end of the day on May 25, with the following schedule for briefing the motion for preliminary injunction: Plaintiffs' motion due May 14, Defendants response due May 18, Plaintiffs reply due May 20 at noon, with a hearing thereafter at the Court's earliest convenience.  Plaintiffs also reiterated their position that the Temporary

Restraining Order be expanded to include certain of the oral recommendations made by amici at the May 7 hearing.

2. During the meet and confer, the Defendants advised that they were opposed to continuation of the Temporary Restraining Order beyond its current expiration on May 11 at 11:59 pm. Defendants also advised that if the Court continues the Temporary Restraining Order beyond that point, Defendants will respond to Plaintiffs' proposed schedule for briefing a motion for preliminary injunction. Defendants also advised that they were opposed to expanding the Temporary Restraining Order.

3. The Court's Temporary Restraining Order should be extended until the Court renders a decision on Plaintiffs' forthcoming motion for a preliminary injunction and should be expanded to adopt key recommendations from *amici* presented at the May 7 hearing.

4. Since Plaintiffs requested the initial Temporary Restraining Order on April 18 (ECF 39), the number of patients and staff at St. Elizabeths with COVID-19 and the number of fatalities has continued to climb. For patients, the number of COVID-19 positive individuals has doubled from 36 to 72 (as of May 6), and the number of patients who have died has more than tripled, from 4 to 13.[1] Over the same period of time, the number of COVID-19 positive staff has increased from 56 to 78.

---

[1] Dist. of Columbia Dep't of Human Servs., *Human Services Agency COVID-19 Case Data*, https://coronavirus.dc.gov/page/human-services-agency-covid-19-case-data.

5. The Court's Temporary Restraining Order has been helpful in protecting patients and staff at Saint Elizabeths from risk of exposure to COVID-19, and the rate of new patient and staff infections has declined since the Court entered the order on April 25. Since that time, the number of COVID-19 positive staff has increased by 9 (from 69 to 78) and the number of patients has increased from 48 to 72. Notably, 12 of the new COVID-19 positive patient cases were reported on April 30, and came from a unit where Defendants had not implemented adequate quarantine practices for individuals who had been exposed to COVID-19. *See* ECF No. 66.

6. While the Temporary Restraining Order has helped slow the spread of the virus, Plaintiffs continue to be exposed to unconstitutional conditions that endanger their health, which constitute an irreparable injury. *See generally* April 25 Mem. Decision (ECF No. 59) at 12-17.

7. On May 7, court-appointed *amici* presented their preliminary findings to the Court, while cautioning that data analysis and recommendations are still being developed. *Amici* began their presentation noting the seriousness and wide-spread nature of the COVID-19 outbreak at Saint Elizabeths and their concern that the virus was continuing to spread and that pa patients and staff were continuing to be exposed.

8. At the May 7 status conference, *amici* identified numerous instances in which Defendants are failing to meet professional standards, including (i) the need to reduce the patient census, (ii) the need to minimize unnecessary staff presence at the Hospital overall and staff movement between different COVID-19 status units in

particular, (iii) criticism of the isolation protocols for persons under investigation (PUI), (iv) inadequate data management, (v) reuse of masks by staff that is inconsistent with CDC guidelines, (vii) inconsistent use of face shields by staff, (viii) inadequate hand hygiene, and (ix) failure to do point prevalence surveys and testing of all staff and patients.

9. Critically, as reported during the May 7 status conference, there were two new patient cases reported on the evening of May 6. Amici opined that these cases were likely caused by staff-to-patient transmission rather than patient-to-patient transmission and recommended additional measures the Hospital should be taking at this time to prevent further spread.

10. *Amici* also stressed that point protocol surveys were necessary to track and manage the COVID-19 outbreak, and that Saint Elizabeths Hospital staff did not have the capacity or experience to track the resulting data. Without this testing and data management, there is a real and immediate risk that staff or patients will expose patients to COVID-19.

11. Additional evidence, including *amici* observations, confirm the Hospital's inability to meet professional standards before the TRO was in place, including: (i) failure to properly isolate or quarantine patients, (ii) prior insufficient testing, (iii) inadequate data management, (iv) failure to adequately screen entrants into the Hospital, and (v) screening of new patients.

12. Defendants' April 30 report of 12 new cases because of insufficient medical isolation procedures prior to the entry of the Temporary Restraining Order demonstrates the importance of keeping the Temporary Restraining Order in place.

13. *Amici* also indicated that data analysis was ongoing and that the report submitted on May 11, 2020 would contain additional facts and recommendations to manage the COVID-19 outbreak at Saint Elizabeths. In particular, Dr. Canavan suggested that his report would contain concrete recommendations to ensure that patients at the Hospital are receiving adequate mental health care.

14. Although some practices have improved since the Court entered the TRO, Defendants cataloguing of what is going right does not change that much is still going wrong; Defendants are failing to meet professional standards and failing to protect patients from unnecessary risk of harm.

15. The evidence presented by *amici* and the Defendants' own compliance reports demonstrates the importance of both extending the TRO while the parties brief a motion for preliminary injunction <u>and </u>expanding the Temporary Restraining Order to adopt three critical new measures recommended by amici: (1) conducting a baseline "point prevalent testing" regime for all patients and staff at the facility (as well as periodic updates); (2) taking precautions to prevent staff from spreading the virus by restricting staff from working on both COVID-positive and COVID-negative wards, and (3) requiring the assignment of a professional epidemiologist to analyze and track the outbreak.

16. These three discrete steps were all strongly recommended by amici and there is no justification for delay these measures. These measures may well save lives by slowing the spread of the virus and enhancing Hospital staff's ability to respond to it. As *amici* indicated, these measures will also allow the Hospital to identify and maintain healthy, COVID-19 free units and begin providing a higher level of in-person and group therapies as required by patients' individualized recovery plans.

17. Plaintiffs ask the Court enter the forthcoming Proposed Order extending and expanding the TRO.

## DEFENDANTS' POSITION

The thorough oral report presented by the Court-appointed *amici curiae* on May 7, 2020 has confirmed that Saint Elizabeths Hospital is exhibiting sound professional judgment in responding to the COVID-19 pandemic. Defendants object to extending the TRO beyond May 11, 2020. To further extend or expand upon emergency relief would needlessly exert judicial control over the Hospital's affairs without any factual or legal basis.

The *amici*'s oral report resolved the factual disputes between the Parties—revealing that Saint Elizabeths has been working diligently to protect patients and provide care amid the pandemic. Simply put, the Hospital's practices and protocols on infection control have been and continue to be in line with sound professional judgment. The *amici* reported the following:

- The Hospital is cohorting patients appropriately. *Accord* Decl. of Elaine Tu [42-5] ¶ 7. Saint Elizabeths is testing symptomatic patients and placing

  them into medical isolation housing designated for persons under investigation (PUIs). The Hospital has also now completed mass testing of all units regardless of patient symptoms or exposure. *See also* May 5, 2020 Notice of Compliance [73] at 1.

- *Amici* reported that the Hospital has effectively reduced new admissions. Court-ordered new patients—of which there are currently very few—are screened for COVID-19 before entering the facility, and Saint Elizabeths requests that they be tested before arriving at the Hospital. *Accord* Decl. of Martha Pontes [42-4] ¶ 15 ("Saint Elizabeths will continue to request that newly referred pre-trial and post-trial patients in the future be tested by DOC before arrival at Saint Elizabeths.").

- Visitors are properly screened through temperature checks and screening surveys that have been updated to screen for symptoms based on recent developments in the understanding of COVID-19. The Hospital began screening visitors in March 2020, even before observing its first suspected case. *Accord* Tu Decl. ¶ 4 (staff trainings on precautions began in February 2020).

- Common areas and bathrooms are cleaned frequently and regularly. Units are clean, sanitary, and cleaned using appropriate cleaning and sanitization products. Soap is available on units. *Accord* Decl. of Renee Bivins [42-6] ¶¶ 5-8. *Amici* noted that the Hospital previously made non-alcohol-based hand sanitizer available to patients based on safety concerns with providing alcohol-based sanitizers to patients who might ingest it. Based on the recommendations of *amici*, the Hospital has removed the non-alcohol-based hand sanitizer from the units and now makes alcohol-based hand sanitizer available to patients.

- Staff are enforcing—and patients are observing—social distancing and mask wearing requirements. *Accord* Pontes Decl. ¶ 10.

- Adequate masks, gloves, face shields, and cleaning products are in ample supply, although the *amici* offered suggestions for staff gown usage that would require the Hospital to acquire additional stock of disposable gowns.

- Staff wear appropriate PPE, don and doff their PPE appropriately, and do not move excessively to and from units. The *amici* recommended further limiting staff movement across units and minimizing staff presence in the Hospital.

7

Similarly, *amici* reported that despite the limitations imposed by COVID-19 and the competing needs of infection control, the provision of mental health care and the evaluation of patients for community placement have continued. *Amici* reported the following:

- Saint Elizabeths's Department of Social Work regularly evaluates patients for placement into the community, has successfully discharged a number of patients into the community since the pandemic began, and has done so despite external barriers.[2] *Accord* Gontang Decl. ¶ 7.

- Mental health treatment has continued where possible, though *amici* noted that in-person group activities may not be compatible with infection control. WebEx teleconferencing platforms have facilitated ongoing individual therapy sessions. *Accord* Gontang Decl. ¶¶ 12-13. *Amici* offered suggestions for using technology and developing a multi-phase plan to reintegrate group therapy as the pandemic subsides.

- Patients of all ability levels had a good understanding of how to take precautions against the virus and why those precautions are important. *Accord* Tu Decl. ¶ 5.

- Unit psychologists, social work staff, and clinical administrators have been performing regular patient check-ins. *Accord* Gontang Decl. ¶ 11.

- Despite the limitations of COVID-19, staff have worked hard to engage patients. *Amici* observed that despite quarantining measures, patients still receive scheduled time on the Hospital's recreation yard. Hospital staff have prepared activity packets for the patients. *Amici* also observed staff engaging patients in a game of charades, and creatively conducting individual competency restoration sessions.

- Overall, *amici* observed that staff are interacting with patients "in caring and creative ways," and the use of restraint and seclusion appears to be lower than average.

---

[2] Although Dr. Canavan stated that a number of patients discharged in the last 30 days were transferred to the D.C. Jail, that is incorrect. Only one patient has been recently transferred to the D.C. Jail after seriously harming a Hospital physician.

To extend or expand emergency relief in light of these findings would be unwarranted. Saint Elizabeths has reported in detail its compliance with the Court's TRO. *See* Notice of Compliance [64, 70, 73]. The preliminary findings of the *amici* and the Hospital's reported census statistics show clear progress in reducing new infections, most notably through the Hospital now having tested the entirety of its patient population.[3] The universal difficulties of combating COVID-19 aside, Saint Elizabeths has implemented and continues to implement infection control protocols consistent with available guidance from the Centers for Disease Control and Prevention (CDC) and recommendations from the D.C. Department of Health (DOH). The *amici* repeatedly described Saint Elizabeths's practices and protocols as adequate and consistent with accepted guidance while offering additional recommendations for continued improvement. Saint Elizabeths has been following the most current CDC and DOH infection control guidance from the outset—implementing prevention measures before even registering its first suspected case.

And, despite the need to impose infection control measures and some resource limitations, the Hospital has continued to provide mental health treatment and therapeutic services to the fullest extent possible, facilitating teletherapy services and continuing treatment from on-site clinicians. Notably, Dr. Canavan laid out in detail the extent to which Saint Elizabeths's Department of Social Work has consistently evaluated patients for placement into the community, has successfully

---

[3] The Hospital's recent practice of testing entire units, even if patients are asymptomatic, accounts for much of the increase in *known* positive cases since the middle of April.

placed dozens of patients into the community since the pandemic began, and has done so despite external barriers.

Simply put, no legal or factual justification exists for ongoing intervention from the Court. The preliminary findings of the Court-appointed *amici* corroborate the facts that the District of Columbia (the District) laid out in its opposition to plaintiffs' motion for a temporary restraining order [42], and make clear that plaintiffs' legal claims against the District are unfounded. The *amici*'s neutral factual findings reveal that no one at Saint Elizabeths has failed to exercise professional judgment in responding to the COVID-19 pandemic, let alone in a way that could have violated plaintiffs' due process rights. There is no evidence that any professional entrusted with plaintiffs' or any other patient's care made a decision that was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." See *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). *Amici*'s findings make equally clear that plaintiffs' claim under the Americans with Disabilities Act (ADA) has no basis given the extensive efforts the Hospital has made to evaluate patients for community placement and discharge when doing so is feasible and consistent with continued care. See *Brown v. District of Columbia*, 928 F.3d 1070, 1077 (D.C. Cir. 2019). Moreover, the *amici*'s findings do not even suggest that the District is somehow denying plaintiffs equal access to benefits offered to others in the community. See *Olmstead v. Zimring*, 527 U.S. 581, 603 n.14 (1999). This is especially true given that, as the Court has previously observed, no class has been certified. Plaintiffs have not

shown any basis for emergency relief as to themselves—let alone for relief to non-parties.

The District voluntarily agreed to extend the TRO through May 11, 2020, only to allow the *amici* to complete their written report before any further proceedings—not because there is any need for oversight of the Hospital's work. The *amici* made clear that COVID-19 found its way into Saint Elizabeths in spite of the Hospital's extensive prevention efforts, not because of them. The *amici* have offered a number of insightful recommendations based on their expertise that the Hospital plans to consider and implement—and, as the *amici* noted, has already implemented in some cases—to the extent possible in light of competing needs. But at no point did *amici* suggest that plaintiffs or anyone else in Saint Elizabeths faces a likelihood of irreparable harm absent additional Court intervention. No further intervention is warranted.

The three areas in which plaintiffs seek the Court's intervention do not reflect any constitutional deprivations and do not demonstrate a likelihood of irreparable harm absent a Court order. Saint Elizabeths already minimizes staff movement between units to the extent possible and ensures that staff properly change their PPE before entering a new unit. *See* April 28, 2020 Joint Status Report [63] at 3. Similarly, no irreparable harm will inure to plaintiffs absent an order assigning an epidemiologist from DC Health to focus on Saint Elizabeths. *Amici* have indicated that such a measure would be helpful, and the District agrees. The District is exploring this possibility, including whether DC Health has staff to provide this

11

support. A Court order is not necessary, nor would it be appropriate. Finally, no irreparable harm would fall on plaintiffs absent Court-ordered point-prevalent testing for the simple reason that the Hospital has now tested all patients in the facility, and is already exploring the possibility of point-prevalent testing periodically as recommended by *amici*. Once again, practical constraints need to be considered, such as the availability of testing capacity and analysis at the D.C. Lab,[4] and the Hospital's ability to require staff testing on-site. A Court order requiring the Hospital to do this to the extent possible would simply be ordering the Hospital to do what it is already doing.

The District opposes extending the TRO beyond May 11, 2020, and intends to oppose any further emergency relief plaintiffs might seek.

Dated: May 8, 2020.                                   Respectfully submitted,

| | |
|---|---|
| KARL A. RACINE<br>Attorney General for the District of Columbia | /s/ John A. Freedman<br>John A. Freedman (D.C. Bar No. 453075)<br>Tirzah S. Lollar (D.C. Bar No. 497295)<br>ARNOLD & PORTER LLP |
| TONI MICHELLE JACKSON<br>Deputy Attorney General Public Interest Division | 601 Massachusetts Ave., NW<br>Washington, D.C. 20001<br>Tel.: (202) 942-5000 |
| /s/ Fernando Amarillas<br>FERNANDO AMARILLAS [974858]<br>Chief, Equity Section | Fax: (202) 942-5999<br>John.Freedman@aporter.com<br>Tirzah.Lollar@arnoldporter.com |
| /s/ Micah Bluming<br>MICAH BLUMING [1618961]<br>HONEY MORTON [1019878] | Kaitlin Banner (D.C. Bar No. 1000436)<br>Margaret Hart (D.C. Bar No. 1030528) |

---

[4] Although Saint Elizabeths now has access to Abbott point-of-care rapid testing, analysis by the D.C. Lab remains the best option for point-prevalent testing of the entire facility in light of the rapid testing machine's daily testing limitations.

Assistant Attorneys General
ROBERT A. DEBERARDINIS JR.
[335976]
Senior Assistant Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov
honey.morton@dc.gov
robert.deberardinis@dc.gov

Counsel for Defendants

Hannah Lieberman (D.C. Bar No. 336776)
Jonathan Smith (D.C. Bar No. 396578)
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
Kaitlin_banner@washlaw.org
margaret_hart@washlaw.org
hannah_lieberman@washlaw.org
jonathan_smith@washlaw.org
maria_morris@washlaw.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org
mperloff@acludc.org

Counsel for Plaintiffs