UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENZO COSTA, *et al.*,

    *Plaintiffs*,

v.

BARBARA J. BAZRON, *et al.*,

    *Defendants*.

Civil Action No. 19-3185 (RDM)

## MEMORANDUM OPINION

Before the Court are the parties' respective positions on extending the temporary restraining order ("TRO"), Dkt. 60, which is set to expire at 11:59 pm tonight. Plaintiffs propose that the Court extend the TRO until May 25, 2020 and also request that the Court expand the TRO in three respects. Dkt. 74 at 1. Defendants oppose extending or expanding the TRO. *Id.* at 6. For the reasons explained below, the Court finds that there is good cause to extend it until May 22, 2020 and to expand it in two respects. The Court further encourages—but does not at this time order—Defendants to implement *amici*'s other recommendations to the extent possible and consistent with the health and well-being of the patients (and staff) at Saint Elizabeths Hospital.

### I. BACKGROUND

The Court has recounted much of the relevant factual background and procedural history at length in its earlier memorandum opinion, *see Costa v. Bazron*, 2020 U.S. Dist. LEXIS 73944, at *2–14 (D.D.C. Apr. 25, 2020) ("*Costa I*"), and will only summarize and add to that background as necessary here.

The last time this case was before the Court, Plaintiffs had moved for a TRO seeking immediate redress with respect to a number of allegedly unsafe and unconstitutional conditions at Saint Elizabeths Hospital resulting from the rapid spread of COVID-19 among the patients and staff at the hospital. Dkt. 39. In the week that followed, the Court held a telephonic hearing to address the Plaintiffs' motion; requested that Plaintiffs identify the actions that, in their view, needed to be redressed on the most pressing basis; ordered that the parties meet and confer, along with the parties' experts, regarding those high priority concerns; and held a second telephonic hearing to address the high priority concerns as to which the parties disagreed. *See Costa v. Bazron*, 2020 U.S. Dist. LEXIS 73944, at *2–14.

Upon consideration of the parties respective positions, the briefs, and all of the relevant evidence before it at that time, the Court granted Plaintiffs' motion for a TRO in part and deferred ruling on the motion in part, Dkt. 59, and entered a TRO, Dkt. 60. The TRO, which remains in effect at this hour, requires the hospital (1) to isolate individuals who have been exposed to COVID-19 in individual quarantine spaces to the extent medically and psychiatrically practicable; (2) to conduct clinical evaluations prior to releasing patients suspected of having COVID-19 from isolation, and, if higher clinical suspicion exists, to administer the CDC-recommended, two-test release protocol; and (3) to provide the Court and Plaintiffs' counsel with periodic reports detailing their efforts to comply with the Order. *Id.* at 1–2. The TRO is set to expire at 11:59 pm tonight unless extended for good cause. *Id.* at 2.

Three days after the Court issued the TRO, it held a status conference and directed the parties to meet and confer as to the appointment of a third party (or parties) to conduct the fact-finding necessary for further proceedings. Minute Entry (Apr. 28, 2020). The parties identified three potential candidates: Dr. Ronald Waldman, an infectious disease expert with vast

experience on advising public health entities; Joan Hebden, a specialist in infection prevention and control; and Dr. Patrick Canavan, a licensed psychologist, and former CEO of Saint Elizabeths, who could advise on the mental health treatment aspects of Plaintiffs' claims.  Dkt. 65 at 2.  Because the parties had some disagreement about the proper scope of the fact-finding inquiry, the Court held another telephonic status conference to address the disputed issues.  Minute Entry (May 1, 2020).  After hearing from the parties, the Court appointed Dr. Ronald Waldman, Joan Hebden, and Dr. Patrick Canavan as *amici curiae* to conduct an investigation and to provide information to the Court relating to a list of questions relevant to Plaintiffs' claims.  Dkt. 68.

On May 7, 2020, the Court held a further status conference at which the Court-appointed *amici* presented their preliminary findings and recommendations.  Dkt. 77.  That same day, the Court extended the TRO until May 11, 2020, at 11:59 pm, finding that good cause existed because, among other things, *amici*'s written report would not be finalized until May 11, 2020, and the Court would "need an opportunity to determine whether the TRO should be extended and/or modified in light of that report."  Minute Order (May 7, 2020).  The Court was further convinced, based on the preliminary report, that good cause existed for extending the TRO until May 11, 2020.  The next day, the parties filed a joint status report setting forth their respective positions on whether the TRO should be further extended or expanded.  Dkt. 74.

*Amici* have now filed their reports with the Court summarizing their findings and recommendations.  Dkt. 78; Dkt. 81.  Those reports are remarkably thorough, balanced, and considered, particularly given the very short timeframe *amici* had to investigate and to report on the fast-evolving circumstances at Saint Elizabeths.  *Amici*, moreover, were uniformly impressed

with the cooperation that the received from the staff and management at the hospital.  The Court extends its gratitude to *amici* and the hospital's staff and management for their mutual efforts.

## II.  ANALYSIS

A TRO expires at the earlier of 14 days after the time of its entry or the date the court sets, "unless before that time, the court, for good cause, extends [the TRO] for a like period or the adverse party consents to a longer extension."  Fed. R. Civ. P. 65(b)(2).  Although there is little case law on what constitutes "good cause," "a showing that the grounds for originally granting the [TRO] continue to exist" is sufficient, Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2953 (3d ed. Apr. 2020 Update), and courts have also found "good cause" where more time is needed fully to consider the parties' arguments and motions or "where the moving party need[s] additional time to prepare and present its preliminary injunction," *SEC v. Arisebank*, No. 18-cv-186, 2018 U.S. Dist. LEXIS 234235, at *3 (N.D. Tex. Mar. 9, 2018) (collecting cases).

Here, Plaintiffs request that the TRO be extended until the Court "renders a decision on [their] forthcoming motion for a preliminary injunction."  Dkt. 74 at 2.  Although Plaintiffs acknowledge that the TRO has "helped slow the spread of the virus" at Saint Elizabeths, *id.* at 3, they also stress that the "number of [COVID-19 positive] patients and staff . . . and the number of fatalities has continued to climb," *id.* at 2.  They note, for example, that, as of May 6, 2020, "the number of COVID-19 positive individuals has doubled from 36 to 72 . . ., and the number of patients who have died has more than tripled, from 4 to 13."  *Id.* at 2.  Since filing the joint status report, moreover, the Court has learned that an additional patient has died, bringing the death toll among a relatively small population to 14.

Plaintiffs also ask that the TRO be expanded in three ways.  They contend that, although the hospital's "practices have improved since the Court entered the TRO," Defendants are still

"failing to meet professional standards" in at least three key respects identified by the *amici* at the May 7, 2020, status conference. *Id.* at 5. First, although the hospital has tested all patients and staff, it has not conducted a "point prevalence testing" survey, as recommended by the CDC. *Id.* Second, the hospital has not fully restricted cross-unit staff movement—more specifically, Plaintiffs contend that staff should not mix between COVID-19 positive and COVID-19 negative units. *Id.* Third, Plaintiffs ask the Court to order that the District of Columbia Department of Health assign a professional epidemiologist to assist the hospital with data management. *Id.* Defendants oppose any extension or expansion of the TRO. In their view, further emergency relief is not warranted because "the Hospital's practices and protocols on infection control have been and continue to be in line with sound professional judgment." *Id.* at 6.

Having considered the parties' respective positions, the final reports submitted by *amici*, Dkt. 81; Dkt. 78, and the entirety of the record, the Court finds that good cause exists to extend the TRO and to expand it in certain limited respects. As a starting point, the Court finds that good cause exists to extend the TRO because the parties need time to brief, and the Court needs time to consider, the forthcoming motion for a preliminary injunction. *See Arisebank*, 2018 U.S. Dist. LEXIS 234235, at *3. But even setting aside that reason, the conditions at the hospital warrant the extension of the TRO. The Court recognizes, to be sure, that the hospital has taken an array of measures to combat the spread of infection and that the pandemic presents a formidable challenge that is dynamic and ongoing. *See* Dkt. 81 (observing that the hospital "has made a remarkable effort to cohort patients who have known infection with COVID-19"). But the infection control measures currently at issue were adopted shortly after the Court issued the TRO, and the good faith and conscientious compliance with the Court's order does not demonstrate that extension of the order is unwarranted. The Court previously found that the

5

hospital's pre-TRO efforts fell short in the specified respects, *see* Dkt. 59, and no new evidence suggests that the Court's finding was incorrect. To the contrary, *amici* have endorsed the measures specified in the existing TRO and have affirmed that those measures are required as a matter of sound professional judgment.

Moreover, as Plaintiffs observe, the public health crisis at the hospital is ongoing—"[a]s recently as May 9, 2020, . . . tests from six patients not house on COVID [positive] units and one staff member were reported . . . positive for viral RNA." Dkt. 81 at 2. As the Court previously observed, this crisis presents an imminent threat to Plaintiffs and, since the Court issued the TRO, the spread of the virus has continued to have tragic consequences for patients at the hospital. The Court has never doubted, and does not currently doubt, that the staff and management at the hospital are committed to protecting the health and well-being of their patients. Nor does the Court doubt that the task of managing and mitigating the spread of the disease at a facility like Saint Elizabeths presents extraordinary challenges. But, despite that commitment, Defendants' efforts, and the fact that the hospitals' staff and management have done many things very well, *amici* report that the hospital is not adhering to CDC guidelines in at least two key respects.

First, although the hospital has embarked on a point prevalence survey ("PPS") of all patients, it has not included staff in its PPS as recommended for facilities with suspected or confirmed cases. Dkt. 81-1 at 6. The CDC guidance identified by *amici* explains the importance of including staff in the PPS. "[W]hen COVID-19 cases are identified in a [long-term care facility], there are often [Health Care Practitioners ('HCP')] with asymptomatic [COVID-19] infection present as well," and, as a result, "HCP likely contribute to [the] introduction and further spread" of COVID-19. CDC, Testing for Coronavirus (COVID-19) in Nursing Homes

(Apr. 30, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/nursing-homes-testing.html. As a result, the CDC recommends that "PPS of HCP should be considered in facilities with suspected or confirmed cases of COVID-19" as part of a test-based prevention strategy. *Id.* Consistent with the CDC's experience and given the hospital's extensive efforts at cohorting, *amici* posit that staff is the most likely source of continued infection spread at Saint Elizabeths. *See* Dkt. 77 at 10–12. *Amici* therefore stress that it was important to "at least be in conformance with [CDC] guidelines, if not even going beyond them on the conservative side" as the crisis at the hospital is "not just starting now," but rather has "been allowed to develop to where it is at this point. *Id.* at 12. Thus, *Amici* recommend that the hospital conduct a PPS that includes both patients *and* staff and that the hospital re-test, en masse, at regular intervals. *See* Dkt. 18-1 at 6.

Second, *amici* emphasize that infection control requires reducing "traffic within the hospital"—specifically, reducing staff movement between COVID positive and COVID negative units. Dkt. 77 at 10–11. *Amici* were "emphatic in saying that while in the past this has not been respected, there should be no mixing of staff between these units. *Id.* Consistent with the relevant CDC guidance, *Amici* recommend that staff "be assigned daily to only one unit" and if staff work overtime, that it be "on the same unit they have been working throughout the day." Dkt. 81-1 at 5; *see also* Dkt. 54-1 at 10 (CDC recommending that facilities assign dedicated HCP to COVID positive or suspected units, meaning "HCP are assigned to care only for these patients during their shift").

Because Defendants agree that the hospital should follow CDC recommendations, *see, e.g.*, Dkt. 54-2, and because *amici* have underscored the reasons why it is important for the facility to abide by these recommendations, the Court concludes that the hospital's unexplained

7

failure to abide by the CDC guidance in this respect is not based on the exercise of professional judgment. For this reason, and in light of the Court's previously analysis, *Costa I*, 2020 U.S. Dist. LEXIS 73944, at *27–29 (explaining that Plaintiffs have established irreparable harm, and that the balance of hardships and public interest favor injunctive relief), the Court finds that good cause exists to expand the scope of the TRO to require the hospital to abide by these two recommendations.

In contrast to those two measures, the Court is unpersuaded that, at least on the present record, Defendants' failure to assign an epidemiologist to the facility warrants emergency relief. At the May 7, 2020, status conference, *amici* reported "that it would be a good idea for the Department of Health to assign an epidemiologist to the facility" to help with data management and that the District is apparently considering that recommendation. Dkt. 77 at 16. The final written report, likewise, recommends that the Court order the District "to assign a dedicated individual with appropriate epidemiological skills to oversee and be responsible for the collation and analysis of all testing data, and all data pertaining to infection prevention and control policies and procedures." Dkt. 81 at 9. On the present record, what is not clear to the Court, however, is whether failing to do so would constitute a "substantial departure" from professional judgement or whether it is merely a departure from a preferred or optimal response. Like *amici*, the Court urges Defendants to take this measure, but the Court is unconvinced that Defendants' failure to do so constitutes a violation of Plaintiffs' constitutional rights. Similarly, although not yet addressed in the parties' briefs, the Court also urges Defendants immediately to implement *amici*'s other, significant recommendations to the extent consistent with patient health and well-being.

Having resolved issues of substance, the last issue is duration. It is well-settled that 28 days is the outer limit for the time that a TRO can remain in place without consent of the enjoined party, regardless of whether the TRO was issued with or without notice. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 844 (7th Cir. 2012); *see also Sampson v. Murray*, 415 U.S. 61, 87 (1974) (agreeing with a lower court's conclusion that "a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions"). Applying that limit here, and because Defendants do not consent to any further extension, the TRO cannot be extended beyond May 22, 2020, at 11:59 pm.

## CONCLUSION

For the reasons explained above, the Court will extend the TRO until May 22, 2020 at 11:59 pm and will expand the TRO in the limited respects discussed above.

A separate order will issue.

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 11, 2020