**Third Declaration of Elizabeth Jones**

I, Elizabeth Jones, submit the following declaration assessing the measures described by the District of Columbia's Department of Behavioral Health in response to the COVID-19 pandemic at St. Elizabeths Hospital.

I declare as follows:

1. I have over 35 years of experience managing the provision of services to people with intellectual and behavioral health disabilities, including managing public sector psychiatric hospitals in Massachusetts, Maine, and the District Columbia. My resume was filed with the first declaration I submitted for this case. I have drawn on my administrative experience to evaluate the actions described by the Defendants in this matter.

2. I have reviewed the report of *Amicus Curiae* Dr. Patrick Canavan, in addition to the material I reviewed for my prior declarations.

3. It is my professional opinion that the current level of treatment occurring at St. Elizabeths Hospital, as described by Dr. Canavan, falls far short of what patients need to continue their recovery from the serious mental illness that necessitated admission to a psychiatric institution. As reported to Dr. Canavan, by multiple individuals in care, "very little, if any, treatment is occurring and…there is little for them to do on the units other than watch TV." The documentation of treatment hours confirmed that fewer than 100 hours of treatment have been provided since April 1, 2020 in stark contrast to the almost 6000 hours just two months earlier. Only 53 individuals out of a current census of 209 individuals have been prescribed individual therapy sessions, to be conducted via teleconferencing. Yet, this therapy is "on hold" for nine individuals (17%) for various reasons. The Therapeutic Learning Centers are closed and both the current and anticipated efforts to substitute alternative treatment modalities are woefully

inadequate.

4.      The conditions at St. Elizabeths Hospital, as described in Dr. Canavan's report, are a clear risk to health and safety. They are drastic deterrents to treatment, recovery and timely discharge; risk traumatizing patients and exacerbating symptoms of mental illness; and inevitably will result in long lasting, if not permanent, damage to the individuals and their efforts at recovery.  These circumstances violate professional standards of care and treatment.

5.      The standard expected practice at psychiatric hospitals, like Saint Elizabeths, is that clinicians and treatment teams, along with the patient, develop Individual Recovery Plans that are then implemented with fidelity.  Based on Dr. Canavan's report, Saint Elizabeths is not implementing its treatment plans and steps have not been taken to modify them in light of this health crisis.  Therefore, patients simply are not receiving the services that their treatment teams determined were essential for recovery and acceptable alternative strategies have not been substituted.

6.      It is critical that patients at Saint Elizabeths receive adequate individualized counseling and support to manage their mental health in response to the crisis, including their anxiety about the pandemic; grief counseling in response to peers or other friends and relatives suffering from or dying from COVID-19; recreation time, including time each day to go outdoors (consistent with COVID-19 restrictions); and enhanced access to social support from friends and family in the community.  Based on Dr. Canavan's report, Saint Elizabeths has not taken sufficient action to address behavioral health needs specifically arising from this crisis. For example, the report does not document any actions underway to assist each patient who is experiencing the stress, isolation and restrictions created by this pandemic.  There is no information about the strategies for recognizing and ameliorating, to the greatest degree possible,

the emotional toll of this crisis on each individual confined to this institution.

7.  Furthermore, Dr. Canavan's report documented that it is unclear who is reviewing incidents of restraint and/or seclusion and the Medical Director confirmed that he is not reviewing incidents. This is not only contrary to expected practice but it raises serious concerns about the lack of oversight and the status of effective treatment for those individuals experiencing these restrictive practices.

8.  Finally, it is indeed very troubling, and contrary to expected practice, that Dr. Canavan's report documents that the District of Columbia is failing to properly plan and timely execute discharges from the Hospital. It is reported that the pre-COVID practice of reviewing the "Ready-to-Discharge" List at biweekly meetings with staff at the Department of Behavioral Health ceased in mid-March. As a result, discharge barriers are not identified and remedied. Contacts with representatives from the community sector are seriously curtailed. The failure to expedite appropriate discharge to an individualized community setting is contrary to standard practice in the field and jeopardizes the individual's recovery and emotional stability. As of May 6, 2020, there were 56 individuals on the "Ready-to Discharge" List. In addition, the practice of discharging to shelters should be immediately discontinued. According to Dr. Canavan's report, 16 individuals were sent to shelters from St. Elizabeths. This is flatly unacceptable and again demonstrates the failure to plan and effectively implement expected discharge practices. Placement in a shelter during this pandemic places the individual at serious risk of exposure to infection.

9.  It continues to be my professional opinion that, based on the number of people on the Ready- to- Discharge List, if concentrated efforts were made, the District could discharge these individuals from Saint Elizabeths and place them in the community because they present

low-risk and may have homes or housing where they can receive appropriate supports. The District's lack of effort to effectuate these placements is troubling during the best of times, but particularly concerning in light of the danger posed by COVID-19 exposure at the Hospital. Dr. Canavan's report clearly demonstrates that Saint Elizabeths is not the appropriate placement for a significant number of patients in light of the COVID-19 pandemic.

10. St. Elizabeths is part of the District of Columbia's mental health system. It should not stand in isolation from the wide array of community-based services and supports funded by the District's government. As other states are now demonstrating, individuals with a serious mental illness are being successfully supported and treated in the community during the COVID-19 crisis. These accomplishments are the result of systemic planning, flexibility in funding, continuing technical assistance, strong collaboration between community providers and hospital staff, and oversight by the state agencies. The District of Columbia needs to promptly develop more systemic strategies for coping with the demands of this crisis so that individuals not only receive timely and effective treatment at St. Elizabeths while hospitalized but, equally importantly, are discharged to appropriate community settings with supports as soon as clinically and programmatically possible. It is widely recognized in the field of mental health that individuals should not be confined to a psychiatric institution if alternative community-based options can be implemented.

11. In order to address these deficiencies in treatment and discharge planning, I propose the following recommendations, in addition to the recommendations in my prior declarations:

    a. Saint Elizabeths Hospital should be instructed to develop a plan to implement Individual Recovery Plans, with any appropriate modifications required for

    health/safety during the ongoing COVID-19 crisis. The Medical Director at Saint Elizabeths Hospital should ensure updated individual assessments of all patients, with input from the patients' treatment team, his/her attorney, and/or other supportive decision makers as determined by patient choice, to evaluate the effects of the stress and trauma of the impact of the current COVID-19 pandemic as well as the clinical repercussions resulting from Defendants' deprivation of appropriate mental health services. The Medical Director should ensure that any necessary changes to Individual Recovery Plans are implemented without further delay. The recommendations included in Dr. Canavan's report should be implemented in order to improve the delivery of necessary treatment services and supports.

  b. It is strongly recommended that the Court continue to rely on the fact-finding and recommendations of its *Amici Curiae* or appoint a Court Monitor to provide independent oversight until compliance with the requirements for health/safety, treatment and timely discharge are met and sustained for a period of time determined by the prevalence of the COVID 19 virus in the District of Columbia.

I declare, under penalty of perjury, that the forgoing is true and correct. Executed on May 14, 2020.

*Elizabeth Jones* (signature)

Elizabeth Jones