**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ENZO COSTA, et al.,

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA, et al.,

      Defendants.

Case No.  1:19-cv-3185 (RDM)

**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DIMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case is about Defendants' ongoing failure to ensure that patients at Saint Elizabeths' are able to receive safe, sanitary, and adequate care during public health crises. First Amended Complaint ("FAC") (ECF 50).  Plaintiffs filed this case in October 2019, when Saint Elizabeths' water supply was contaminated, and patients were forced to live in unconscionable conditions for 28 days while the water was entirely shut off.  Patients, who are all deemed in need of intensive psychiatric care, were denied treatment and patient health and safety were compromised. FAC ¶¶ 130-201.  The October 2019 water outage was the second in three years:  there was an extended water outage in 2016, FAC ¶ 145. Following the filing of this suit, Plaintiffs heard reports of a water outage in November 2019, and a third water supply incident was reported by Defendants in June 2020. *See* Decl. of K. Singh Taneja, ECF 107-3.  In December 2019, Defendants filed a Motion to Dismiss, ECF 21, which argued, among other things, that the case was moot because the water outage had ended prior to the filing of the suit and was unlikely to recur. Plaintiffs moved for jurisdictional discovery to analyze that claim, ECF 23. On January 21, 2020, Plaintiffs filed a

1

Motion for Class Certification within the 90-day window provided in Local Civil Rule 23.1(b). ECF 30. On January 22, 2020, the Court granted Plaintiffs' motion for discovery and held Defendants' obligation to respond to the class certification motion in abeyance until after a decision on their motion to dismiss.

In April 2020, Plaintiffs amended their complaint and sought emergency injunctive relief regarding Defendants' abysmal failure to care for patients during the COVID-19 pandemic.  By early April, more than 25 patients and 40 staff had tested positive, over 100 patients were in quarantine, and four patients had tragically died.  FAC ¶ 3.  The Court issued a Temporary Restraining Order, ECF 59, and a Preliminary Injunction, ECF 96, enjoining Defendants to follow critical CDC guidance. On May 30, the Court denied both Defendants' original motion to dismiss and Plaintiffs' motion for class certification as moot, noting that "[t]he parties are free to refile these motions, updating them as necessary in light of the amended pleadings and other developments."  The Court did not specify a deadline to renew the class certification motion.

On July 10, Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment. ECF 107. Plaintiffs opposed that motion, ECF 111, and Defendants replied, ECF 115. Because Defendants' Reply contained two new arguments, Plaintiffs sought leave to file a surreply, ECF 116, which this Court ultimately granted after ordering Defendants' compliance with the Court's January 2020 order granting jurisdictional discovery.  Dec. 2, 2020 Minute Order.

Per the Court's Minute Order, Plaintiffs now address (1) the applicability of the voluntary cessation exemption to the mootness doctrine, in light of Defendants' contention that they ceased the challenged behavior independent of this litigation, and (2) the timeliness of Plaintiffs' motion for class certification.

**ARGUMENT**

**I.      The Voluntary Cessation Doctrine Applies Because Defendants Did Not Cease the Challenged Behavior and Did Not Act Independent of this Litigation.[1]**

Defendants allege that, independent of this litigation, they restored water service and amended the Saint Elizabeths' emergency plan, and that these actions mooted Plaintiffs' claims about the water crisis.  Def. Reply in Support of Mot. to Dismiss, ECF 115 at 3. Defendants' focus on the water restoration and emergency plan misses the forest for the trees by mischaracterizing the challenged behavior.  Plaintiffs challenge Defendants' putting patients at continued risk of chaotic, unpredictable, and unsafe conditions because of Defendants' failure to exercise professional judgment in the face of public health crises.  FAC ¶¶ 123 - 139.  *See also* Memorandum Opinion and Order on Plaintiff's Motion to File an Amended Complaint, ECF 48 ("Plaintiffs' new claim . . . are connected to the original claims by a common thread—both arise from Defendants' alleged failure to plan and adequately to respond to events that endanger Plaintiffs' safety and well-being while held at the Hospital.")  The disastrous consequences of the COVID-19 crisis, just six months after the water crisis, demonstrate that Defendants' revised emergency plan is insufficient, or is not being implemented, or both. FAC ¶¶ 56-122.  Accordingly, the case is not moot to begin with: the challenged conduct is ongoing.

The same is true more specifically with the water problem. Although the parties agree that the water was restored on the same day litigation was filed, FAC ¶ 143, the jurisdictional discovery revealed that Defendants' actions did not actually solve the problem.  Defendants have neither identified the source of the bacteria outbreak, nor remediated it – the return to water service was

---

[1] Plaintiffs incorporate their arguments in their Opposition:  Defendants have not met their burden of proving that Plaintiffs' original claims are moot; if the claims are moot, it is only because of Defendants' voluntary cessation of the challenged conduct; and even if the case were otherwise moot, it is capable of repetition yet evading review.  ECF 111 at 21-23.

only a temporary fix.  *See* Exhibit A, Email from Chastang, DC_205 (explaining that the water was being restored for normal use because the lab results were negative, with no mention of cause or remediation); Exhibit B, Saint Elizabeths Hospital Response to Requested Information from DC Health and Recommendations, October 18, 2020, DC_426 at DC_430 ("DOH: Failure to address the root causes of this problem [the water contamination] in the near future will result in additional impacts to facility and patients, as the hyperchlorination process is only a temporary fix for an underlying issue;  SEH:  Agree.").[2]  And although Defendants produced a Solicitation, Offer and Award to manage the water at Saint Elizabeths, issued November 20, 2019, Defendants produced no documents evidencing any remediation has taken place, much less the effectiveness of any remediation.  Of particular concern, nothing in the production shows regular testing of the water for bacteria after October 11, 2019.  *Compare* Exhibit C, "Solicitation, Officer, and Award, Water Management Plan, DC_265 *with* Exhibit D, Plaintiffs' Request for Production 2e.  Defendants' production also shows that the plumbing system at the Hospital appears to be connected to the 801 East Men's Shelter (located on the Saint Elizabeths campus), where legionella was detected in January 2020.[3]  Exhibit E, "Fwd:  Water Restoration for St. Elizabeth's," DC_362.  Patients thus remain at ongoing risk of unconstitutional conditions resulting from another extended water outage.  The fact that Defendants restored the water does not mean they ceased the challenged behavior of failing to exercise professional judgement in crises and failing to have an emergency plan that comports with professional standards. *Cf. Payne Enterprises, Inc. v. United States*, 837

---

[2] Exhibits A, B, C, and E were produced to Plaintiffs by Defendants on November 13, 2020.

[3] Peter Jamison. Legionnaires disease found in D.C. homeless shelter resident.  Washington Post. January 4, 2020, available at washingtonpost.com/local/dc-politics/legionnaires-disease-discovered-in-dc-homeless-shelter-resident/2020/01/04/2f1b80e8-2f36-11ea-9b60-817cc18cf173_story.html

F.2d 486 (D.C. Cir. 1988) (production of records requested under FOIA does not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future).

In any event, the voluntary cessation exception applies. Defendants revised their emergency plan on March 1, 2020, long after this case was filed. "The voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012). To avoid the voluntary cessation exception, Defendants must rebut "an evidentiary presumption that the controversy reflected by the violation of alleged rights continues to exist." *Wills v. U.S. Parole Comm'n,* 882 F. Supp. 2d 60, 70 (D.D.C. 2012). "Courts will only dismiss the claim if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. And the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Mejia-Mejia v. U.S. Immigration & Customs Enf't*, No. 18-1445, 2019 U.S. Dist. LEXIS 164946, at *21 (D.D.C. Sep. 26, 2019) (internal citations removed).

Defendants cannot meet their burden. A policy alone is insufficient to moot Plaintiff's claims. *Cf. Banks v. Booth*, 459 F. Supp. 3d 143, 156 (D.D.C. 2020) ("Having a written policy in place but not fully implemented cannot protect Defendants from a finding of deliberate indifference"). And, of course, this Court has already found that the March 2020 emergency plan did not prevent the mishandling of the COVID-19 pandemic to such an extent that emergency injunctive relief was required. *See* ECF 95 at 8 ("The Court has already issued two opinions analyzing Defendants' infectious disease control and prevention measures and has concluded that their response has, at least in certain respects, substantially departed from accepted professional judgment"). Not only is it reasonable to expect the unconstitutional conditions to reoccur because of Defendants' failure to exercise professional judgment, but they already have.

## II.     Plaintiffs' Motion for Class Certification Was and Will be Timely.

Local Civil Rule 23.1(b) requires plaintiffs to file a motion for class certification within 90 days of their complaint, which Plaintiffs did.  ECF 30 (filed January 21, 2020, 89 days after the Complaint was filed on October 23, 2019). Defendants contend, with no support, that Plaintiffs were required to file a second motion for class certification within 90 days following the filing of their First Amended Complaint. Reply at 8. That argument is wrong; there is nothing in Local Rule 23.1(b) that requires a party to file a new class certification motion within 90 days of filing an amended complaint.  When the Court dismissed Plaintiffs' Motion for Class Certification as moot, it invited Plaintiffs to file a new motion for class certification, but set no time limit for such a filing, recognizing that such a motion would have to be "update[ed] … as necessary in light of the amended pleadings *and other developments*." May 30, 2020 Minute Order (emphasis added.) Those developments are still unfolding as the COVID-19 pandemic continues to plague the District of Columbia. It also makes little sense to file a new motion for class certification while Defendants' motion to dismiss is pending; should the Court determine that the amended complaint is deficient, any pending motion for class certification would necessarily become moot, and Plaintiffs might seek leave to file a Second Amended Complaint, followed by a renewed class certification motion.[4]

Defendants reliance on *Howard v. Gutierrez* is misplaced; in fact, it *supports* Plaintiffs' position that they were not obligated under Local Rule 23.1(b) to file a subsequent class certification motion within 90 days of their amended complaint.  474 F. Supp. 2d 41, 54-55 (D.D.C. 2007) ("[T]he most natural reading of the rule requires the filing of *a* certification motion within

---

[4] As Plaintiffs' stated in their Motion for Leave to File a Surreply, unless otherwise directed by the Court, Plaintiffs intend to file their renewed Motion for Class Certification following the disposition of Defendants' Motion to Dismiss, based on the Court's prior ruling holding Defendant's obligation to respond in abeyance.  ECF 116, n.1.

ninety days of the *first* complaint that states class allegations[.]" (emphasis added)). And *Gordan v. Biden*, 364 F. App'x 651 (D.C. Cir. 2010), on which Defendants also rely, deals with a party who failed to file within 90 days of its *original* complaint; it offers no instruction for this situation.

However, in the event this Court finds Defendants' argument persuasive, the Court should forgive Plaintiffs' error as excusable neglect. "In deciding whether to grant a motion for an extension of time on the ground of excusable neglect, the Court may consider (1) "the danger of prejudice to the [other party]," (2) "the length of delay and its potential impact on judicial proceedings," (3) "the reason for delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Little v. Wash. Metro. Area Transit Auth.*, 100 F. Supp. 3d 1, 6 (D.D.C. 2015) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Here, there is no danger of prejudice to the other party – Defendants were well aware that Plaintiffs are seeking class certification, and indeed, after receiving Plaintiffs' Motion for Class Certification sought and obtained leave to hold their obligation to respond in abeyance until the Court ruled on their Motion to Dismiss. The delay in filing has had no impact on the proceedings; Defendants' Motion to Dismiss is still pending. And Plaintiffs acted in good faith, complying with both Local Rule 23.1(b) requiring a class certification motion within 90 days, and this Court's order, which set no new deadline for filing a renewed Motion for Class Certification.

## CONCLUSION

For the reasons given above, as well as the reasons in Plaintiffs' Opposition, ECF 111, the Court should deny Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, or in the Alternative for Summary Judgment.

December 11, 2020

Respectfully submitted,

/s/ Kaitlin Banner
Kaitlin Banner (D.C. Bar No. 1000436)
Margaret Hart (D.C. Bar No. 1030528)
Hannah Lieberman (D.C. Bar No. 336776)
Jonathan Smith (D.C. Bar No. 396578)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org

John A. Freedman (D.C. Bar No. 453075)
Tirzah S. Lollar (D.C. Bar No. 497295)
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001
Tel.: (202) 942-5000
Fax: (202) 942-5999
John.Freedman@aporter.com

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Michael Perloff (D.C. Bar No. 1601047)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
915 15th Street NW, Second Floor
Washington, D.C. 20005
(202) 457-0800
aspitzer@acludc.org

*Counsel for Plaintiffs*

8